Dalhoff & Co. v. Coffman.

## DALHOFF & CO. v. COFFMAN.

1. **Promissory note:** DEFENSE OF GARNISHMENT. Where a promissory note is assigned in good faith before maturity, and afterward assigned for collection, the maker cannot exonerate himself from liability to the assignee, because subsequent to the first assignment he has been garnished as the debtor of the payee.

2. **Former adjudication:** DISMISSAL OF ACTION. When the intervenor in an action dismisses his petition of intervention before the final submission of the cause, he will not be estopped by the judgment rendered in the case from subsequently insisting upon the matters contained in his petition of intervention.

*Appeal from Wapello Circuit Court.*

TUESDAY, OCTOBER 21.

ACTION upon a note executed by John Coffman, as follows: "Eighteen months after date, for value received, I promise to pay to the order of Daniel Rogers fifteen hundred dollars, bearing ten per cent interest from March 1, 1870, until paid,

as witness my hand this 31st day of July, 1869. It is expressly understood that, if the undersigned has any thing to pay as a lien now on the land for which this note is given, then the amount so paid is to be deducted from the face of it."

The amended and substituted petition alleges, that on or about the 5th day of August, 1869, the payee of said note sold said promissory note for a valuable consideration to one A. P. Beadle, and indorsed the same as follows: "Pay to A. P. Beadle or order. D. Rogers." That on said 5th day of August, A. D. 1869, the defendant, John Coffman, was verbally notified of the transfer of said note to A. P. Beadle.

That defendant, on the 16th day of November, 1869, paid to Anna Bain $144.27 on the note, and about the same time he paid on the note to Moss & Bro. $326.25. That about the 22d of September, 1872, the note was assigned to petitioners, as follows: "Pay to L. H. Dalhoff & Co. Andrew P. Beadle."

That said note was received under the understanding and agreement set forth in a letter of Andrew P. Beadle, addressed to plaintiffs, of date September 22, 1870, as follows:

" Inclosed please find a note on John Coffman, calling for $1,500 credited with mortgage paid, $470.52. Please send me a receipt for the same. You can take when collected, what Mr. D. Rogers owes you, also what he owes Mr. A. G. Adams, of your place. I will inform you in due time who will be a good hand to collect. You may, if you wish, let Mr. D. Rogers have some goods if he needs them. There is no mortgage to secure the payment, but Coffman is perfectly good, and I suppose he will pay without trouble. You had better write to him a few days before it is due, apprising him of your holding the note. Please send me a receipt by return mail, and oblige yours, etc."

That on said 22d of September, 1870, said Rogers was indebted to plaintiffs in the sum of $89, and to A. G. Adams in the sum of $136.67.

Plaintiffs under the agreement sold goods to Rogers amounting to $271.40. They assumed the account of A. G. Adams.

They afterward accepted an order of Beadle in favor of Day, Tilden & Co., for $100.

On the 2d day of January, 1871, they accepted an order of Beadle to pay the balance to M. A. Overman when collected. That plaintiffs about the 1st of November, 1870, notified defendant of their purchase of said note, and soon after placed · it in the hands of attorneys in Albia for collection. That at no time down to the commencement of this action were they informed that defendant had any defense to said note, except the credits referred to in the letter of Beadle. Plaintiffs ask judgment for $1,201.66, with interest from November 31, 1871, at ten per cent per annum.

The defendant answered substantially as follows :

He admits the execution of the note, and that it appears to be indorsed as set out in the petition, but he denies that the note was transferred to Beadle on the 5th day of August, 1869.

He denies that the note was in fact sold to plaintiffs on the 22d of September, 1870, or at any other time.

He alleges that about the 31st of July, 1869, Rogers was largely indebted, and was insolvent, but was the owner of a certain tract of land in Monroe county, which, for the purpose of cheating his creditors, he conveyed to defendant, with the agreement that defendant was merely to hold the title as trustee. To carry out his intention and in furtherance of said agreement, defendant executed to Rogers the note sued on in this case (except that defendant was not intending to assist Rogers in cheating his creditors, and what was done was done at Rogers' request and to accommodate Rogers only; but defendant had knowledge of Rogers' intention).

Defendant was to have one-half the profits on the sale of the land, and if he should have to pay certain debts of Rogers, for which he was surety, the same should be a payment on the note. Rogers, long after the 18th of August, pretended, through sham, to transfer the note to Beadle, which was done by both to prevent the creditors of Rogers from attaching the note. That said Beadle was the son-in-law of Rogers and had no property or means subject to execution.

That on the 18th day of August, 1869, he was garnished by Robb & Bro., Day, Tilden & Co., and E. Chamberlain & Co., and on the 31st of May, 1870, by Charles Starker & Co., creditors of said Rogers prior to the sale of said land, and that in said garnishment proceedings, judgments were entered as fol-lows:

February 17, 1872, in favor of Day, Tilden & Co., for $175.60, and costs. February 12, 1872, in favor of Robb & Co. for $137.40, $41.40 of which was on account of the in-debtedness on the note in suit. April 19, 1872, in favor of Charles Starker & Co. for $133.76, and costs. May 31, 1872, in favor of E. Chamberlain & Co., for $337, and costs.

The answer further denies that Beadle transferred the note to plaintiffs, and that they paid a valuable consideration there-for, and avers that the transaction was a sham and a fraud, and that plaintiffs knew that Rogers was attempting to place said note in their hands to defraud his creditors.

That, at the April term, 1872, of the circuit court of Monroe county, the case of E. Chamberlain & Co. v. this defendant as garnishee, was pending, and plaintiffs appeared and became parties, and the issues here raised were raised in that case.

That the same questions are involved in all the garnishee cases, and plaintiffs are estopped from retrying said issues.

Defendant asks that the judgments in the garnishee cases may be set off against the note.

Jury trial. Judgment for plaintiff for $991.25. Defendant appeals.

*Hendershott, Perry & Townsend* for the appellant.

*E. L. Burton* for the appellee.

DAY, J. — In addition to their general verdict the jury, pursuant to request of the parties, returned twenty-three special findings. The court gave thirty-one instructions, and the defendant asked eight, which were refused. It is claimed

that eighteen of these special findings are not supported by the evidence or are not responsive; that the court erred in the admission of evidence, in giving sixteen of the instructions given, in refusing to give three of the instructions asked by defendant, and that the general verdict is not supported by the evidence, so that the errors insisted upon by appellant are thirty-nine in number.

To determine each of these assigned errors *seriatim* would extend this opinion to a length entirely unwarranted by the importance of the questions presented. We will endeavor so to consider the case as to compress it within appropriate limits. It is not claimed by defendant that the note sued on did not create a liability to Rogers to the amount of the note. In his original answer defendant states that he knew of no reason why judgment should not be entered against him in the garnishment proceedings, and in the answer to the substituted petition he asks only that the judgments in the garnishment proceedings may be set off against the note. This is all the defendant can legally claim. He could not defend against the note by showing that it was executed in consideration of a transfer of real estate in fraud of creditors. To such a defense the maxim *nemo allegans suam turpitudinem est audiendus* applies. This consideration very much simplifies the case, and narrows the questions of which a consideration is necessary to its determination.

The jury found specially that Rogers in good faith indorsed said note to A. P. Beadle, on or about the 9th day of August, 1869, and that Beadle was the true owner and holder thereof at that date. If this finding is supported by competent evidence, and the plaintiffs are not estopped from denying the liability of defendant to the garnishment creditors, it must be decisive of the case; for defendant was not garnished until the 18th of August, 1869, and the judgments against him as garnishee were not entered until in February, April, and May, 1872, and the defendant admits that he knew of the transfer to Beadle in August, 1869.

If, therefore, the note was assigned to Beadle in good faith

on the 9th of August, 1869, the defendant was not liable thereon to the creditors of Rogers at the time the garnishee judgments were entered against him, and they constitute no defense to the note, even though it be admitted that the plaintiffs took the same, not as owner in fact, but merely for collection.

It is claimed, however, that this finding of the jury is not supported by the evidence, and that the transfer to Beadle was made for the purpose of placing the note beyond the reach of creditors.

It is not practicable without too much incumbering our reports to review at length the evidence upon which questions of fact are determined by a jury, and it is not our custom to do so.

It is the peculiar province of the jury to respond to the facts, and when they have done so, and a motion for a new trial has been overruled, this court very reluctantly interferes with the verdict.

Evidence was introduced tending to show that the farm sold, and in consideration of which the note was executed, was the homestead of Rogers, and not liable for his debts, that he sold it for the purpose of voluntarily devoting a portion of the proceeds to the payment of his debts, that Beadle at the time of the assignment assumed the payment of some of these debts, and executed his note to Rogers for $500, which amount Rogers intended to invest in a new homestead. It was no fraud upon creditors to make whatever disposition he pleased of property exempt from execution.

Whilst it must be admitted that there are circumstances casting grave suspicion upon the *bona fides* of the transfer, and which might lead us to resolve the question differently were it before us as an original one, to be determined solely from the evidence, yet we cannot say that this special finding is so far without support in the evidence as to justify us in setting it aside. Did we overturn every verdict, while we feel that sitting in place of the jury we would have reached a different conclusion, we would invade the province of the jury, and render a determination of fact by it a mere expensive farce.

Dalhoff & Co. v. Coffman.

In all of the garnishment judgments, indemnifying bonds were either filed or ordered to be filed, so that defendant's liability on the Rogers note being conceded, he can sustain no loss by being held liable to plaintiff. Besides, he knew of the assignment long before these judgments were entered against him, and he should have shown this fact to the court. In any event there is nothing of which the defendant can justly complain.

II. The court admitted evidence tending to show that the farm for which the note was given was the homestead of Rogers. This evidence was objected to, and the admitting of it is assigned as error. Appellant's counsel in their reply, however, concede that the evidence was admissible for the purpose of rebutting the idea that Rogers intended to defraud his creditors, and they say they requested the court to so instruct the jury, and that it was not proper to consider the homestead question, or the exempt character of the note given for it for any other purpose, and that he refused to do so. It is apparent, however, that if this evidence was considered for any other purpose by the jury, it worked no prejudice to the defendant under the views above expressed.

III. In the garnishment proceeding of Day, Tilden & Co. against Coffman, the plaintiffs filed their petition of intervention, to which Coffman filed his answer, and afterward plaintiffs filed their motion to dismiss their intervention petition, which was sustained. Appellants claim that the issue in all the garnishment proceedings was the same, and that by thus intervening plaintiffs are estopped from now denying defendants' liability to the plaintiffs in those cases.

Upon this branch of the case the court instructed the jury that if Dalhoff & Co. appeared in the garnishee cases and became a party thereto, it was their duty to set up and plead all their defenses against the right of said creditors to hold said Coffman as garnishee, and if they failed to do so, or failed to defeat the garnishee proceedings in those cases, they cannot in this case dispute the right of said creditors to recover, but if plaintiffs appeared by petition of intervention, and by leave of

court dismissed their petition before a final submission of the case, then such dismissal would be without prejudice to again trying said issues in this case.

This instruction, we think, fairly presented the law applicable to this feature of the case. Plaintiffs were under no obligation to intervene and test the creditors' right to a judgment in that case. Having appeared voluntarily and filed their petition of intervention, there is no reason why they should not be allowed to dismiss the same, and withdraw their appearance, at any time before final submission; and such dismissal, without any express order to that effect, would be without prejudice to their right to contest the creditors' claims afterward, in the appropriate action.

The above view, we believe, disposes of every question material to the proper disposition of the case.

Affirmed.