THE STATE OF IOWA, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

1. **Railroad Commissioners:** ORDERS: REASONABLENESS: OVERHEAD CROSSING: EVIDENCE. Where in an action in equity to enforce an order of the railroad commissioners for the erection of a private overhead crossing by a railroad company, it appeared that said road so divided the farm in question as to separate the owner's dwelling house and stock lots from his farming and pasture lands, on account of which, upon the application of said owner, the defendant had constructed an open crossing across its track on said land, but which the railroad commissioners found to be "exceedingly dangerous," and the only competent evidence to support such finding was that a train coming from the east could not be seen by one approaching the crossing from the house on the north until he was nearly onto the track, but none of the witnesses attempted to fix any distance from the track at which such a train could be seen, and it was shown,

on the other hand, by a map of the road, the accuracy of which was not questioned, that an approaching train could be seen for a considerable distance from the crossing, *held*, that the evidence failed to show that the order was reasonable and just, and therefore was not entitled to enforcement by the courts under chapter 133 of the Acts of 1884.

2. ——: ——: PRIVATE CROSSINGS: INTEREST OF PUBLIC. A private farm crossing over a railroad is a matter affecting public right within the meaning of said statute.

*Appeal from Pottawattamie District Court.*—HON. H. E. DEEMER, Judge.

THURSDAY, OCTOBER 13, 1892.

THIS is an action in equity brought to enforce an alleged order of the railroad commissioners requiring the defendant to build a bridge over its railroad track at such a height as that trains on the railroad may pass under the bridge. Upon a trial in the district court, it was found that such an order was made, and that it was reasonable and just, and should be complied with, and the defendant was ordered and decreed to erect and keep in repair a bridge, and that one Thomas McDonald should grade and build the approaches or roadway to said bridge; and a judgment was rendered against the defendant for two hundred dollars as attorneys' fees for prosecuting the action. The defendant appeals. *Reversed.*

*John W. Cary* and *Wright & Baldwin*, for appellant.

*John Y. Stone*, Attorney General, and *Thos. C. Dawson*, for the State.

ROTHROCK, J.—I. The proceeding upon which this suit is founded was commenced before the railroad commissioners by one Thomas McDonald. It appears that he is the owner of a farm of one hundred and sixty acres, through which the main line of the defendant's

1. RAILROAD commissioners: orders: reasonableness: overhead crossing: evidence.

VOL. 86—20

railroad, running across the state from east to west, is located and operated. The railroad was constructed in the year 1882, and it crosses the farm in a straight line, running nearly east and west, and about thirty rods south of the north line. McDonald's farm buildings are situated north of the railway, and the greater part of the farm lies on the south side of the railroad track. This location of the railroad makes it necessary for McDonald to use a crossing over the railroad more frequently than he would if his farm buildings were located south of the track. In crossing the east half of the farm, the railroad passes through a cut, which at its greatest depth is nine and seven-tenths feet. This depth is somewhat increased by waste earth deposited on the surface of the ground on each side of the cut. This point is south of McDonald's dwelling house and barn. The banks of the cut slope to the west, so that, at a point some considerable distance west of the deepest part of the cut, the top of the railroad is above the level of the adjacent ground. When the railroad was constructed, there was an ordinary farm crossing made at grade at the west end of the cut, with gates in the right of way fences. McDonald used this crossing until the year 1886, when he made application to the defendant to construct an open crossing. His application was in the form of certain letters written to one Hinsey, an agent of the defendant. The letters were as follows:

"BAYARD, April 27, 1886.

"*Mr. Hinsey*,

"DEAR SIR:—I received your letter concerning the gates, and will now state my side of the case. The railroad crossed my farm in the worst shape possible, leaving my dwelling house and stock lots on the north side, and my farming and pasture lands on the south side. I am obliged to cross the railroad to do my entire farm work, and to reach the public domain to go to

any town, to church, to mill, and to school. I refer you to Iowa, 27, which is precisely my case. I now ask of the railroad company an open crossing, which I am fully entitled to. I wish you to answer immediately.

"Yours, etc.,

Thos. McDonald."

"Bayard, May 20, 1886.

"*Mr. Hinsey*,

"Dear Sir:—Your letter of the eighth received, and either you or I made a mistake; it is Iowa 37, instead of 27. I have been too busy since the receipt of your letter to go to the Rapids to make inquiry as to the page, but will do so in case you can't find it. It states that where a farm is so divided by a railroad that the track must be crossed to do all the labor on the farm, and to reach the public domain, he is entitled to an open crossing. I am obliged to cross the railroad to reach the public road anywhere. I would like an answer as soon as possible.       Yours, very respectfully,

"Thomas McDonald."

"Bayard, June 12, 1886.

"*Mr. Hinsey*,

Dear Sir:—I wrote to you some three weeks ago, and have received no answer yet. I would like to know as soon as possible your decision in regard to an open crossing, as I wish to have it in by the first or middle of August. I hope I shall not be obliged to take any severe steps in the matter.

. "Yours, respectfully,

"Thomas McDonald."

In pursuance of the demand made in these letters, the defendant, without delay, changed the crossing into an open crossing, by removing the fences and gates, and constructing cattle guards, and attaching the right of way fences to the cattle guards in the usual manner of a public road crossing at grade. The driveway over.

the track was made with planks sixteen feet in length,
and fourteen feet on each side of said crossing. The
crossing, as made and maintained, was confessedly a
complete open crossing, constructed in the most
approved manner.

McDonald commenced this proceeding in a little
more than a year after this last crossing was con-
structed. After hearing the complaint, the railroad
commissioners made certain findings, to the effect that
the open crossing was extremely dangerous, and an
order was made in these words: "As an equitable
solution of this case, we would advise that Mr.
McDonald surrender the open crossing grade and main-
tain the roadway to the bridge, which will be largely on
his own land, and that the company erect and keep in
repair a bridge over this cut."

The statute which authorizes this action to be
brought provides that an equitable action, in the name
of the state of Iowa, may be "instituted by the attor-
ney general whenever advised by the board of railroad
commissioners that any railroad corporation  *  *  *
is violating and refusing to comply with any rule, order
or regulation made by such board of railroad commis-
sioners." Chapter 133, Acts, 1884. It is exceedingly
doubtful whether this action should have been enter-
tained by the district court. The action of the railroad
commissioners was neither a "rule, regulation or
order." It was merely a matter of advice to McDonald
and the railroad company to compromise their differ-
ences by one building a bridge and the other the
approaches thereto.

But if we were to regard this matter of advice as
an order to erect and maintain a bridge, the statute
above cited requires that the court shall find that the
order "is reasonable and just." In view of all the
evidence in the case, we cannot make such a finding.
The action of the commissioners is based upon the

ground that the open crossing is exceedingly danger-ous. The evidence to sustain this view of the case is very indefinite, and, indeed, the greater part of it is incompetent to establish any fact. The plaintiff introduced in evidence the affidavits of four persons, each of whom stated that, "owing to the location of the crossing at the end of a deep cut, it is dangerous to the life of Thomas McDonald, his family, employees, and stock;" and "that there is no practicable place on said farm for a crossing over said road, except at the top of said grade, and an overhead crossing." These affidavits were objected to by the defendant, not because of the form in which the evidence was pre-sented, but because they are the mere opinions of the witnesses. The objection appears to us to be well taken. The affidavits are mere opinions of persons, without any facts upon which the opinions are based. Other witnesses for the plaintiff testified that the sur-face crossing is a dangerous crossing, and that, when McDonald approaches it from his house on the north because of the cut he cannot see a train approaching from the east until he is nearly on the track. It is a most singular coincidence that all the witnesses who testify for the plaintiff concur in the general statement that a train cannot be seen when approaching the cross-ing from the north until very near the track, but not one of the witnesses state or fix any distance. On the contrary, there is a map of the road in evidence, the accuracy of which does not appear to be questioned, which shows, beyond all controversy and by actual measurement, that an approaching train can be seen for a considerable distance from the crossing. Of course, all railroad crossings at grade are dangerous. Some are more dangerous than others, owing to obstructions to a view of approaching trains by reason of cuts, trees, or other obstacles; but there is no competent evidence in this case showing that there is more danger

at this crossing than at any other situated at the end of a cut. We do not determine that there may not be cases where an overhead crossing may properly be required, but, in view of the fact that grade crossings are the rule in this state, it would require a much stronger case than is here presented to warrant this court in holding that such an order "is reasonable and just." To authorize such a finding, there should be some certainty in the evidence instead of random statements, founded upon the mere opinions of witnesses that the open crossing is very dangerous. In our opinion, there is nothing so unusual or extraordinarily dangerous in this crossing as to require the defendant to construct and maintain a bridge which the evidence shows must span a cut fifty-seven feet wide, and be replaced, if built of wood, every ten years, by reason of the natural decay of the material of which it is built.

II. Counsel for defendant contend that the order is void because it is not a matter of public right, but is

2. ——:—— private crossing: interest of public.

a mere private controversy between McDonald and the railroad company. This question was presented, discussed, and determined in the case of *State v. Mason City & Ft. D. R'y Co.* 85 Iowa, 516. It was there held that a private farm crossing over a railroad is a matter "affecting public right," within the meaning of chapter 133, Laws, 1884. We do not desire to add anything to what is said in the opinion in that case upon this question.

The decree of the district court is REVERSED.