C. H. AINLEY v. AMERICAN MUTUAL FIRE INSURANCE COMPANY, Appellant.

113  709
113  271
113  709
125  303

113  709
d143  255

**Debt of Guaranty:** NOTE OF MUTUAL INSURANCE COMPANY. A mutual fire insurance company created a guaranty fund as a temporary provision for funds authorized by its charter. The fund was raised by borrowing and the lenders received interest-bearing certificates. These certificates entitled the holder to membership, while owned by him and were payable at the discretion of the company. In pursuance of a resolution that the company "guarantee the payment" due one holder, the company made him its note for the amount then due on his certificates. *Held*, though the resolution refers to a "guaranty" and witnesses speak of the note as being security, the note was neither, but was a new evidence of an existing debt, stipulating the time of payment.

**SAME:** *Acts ultra vires.* The execution of such note was not ultra vires since the action of the company in creating the liability guaranty fund certificates was expressly authorized by its charter, and was not in violation of Code, 1873, title 9, chapter 4, regulating fire insurance companies.

**Attorney Fees:** GRANTED BY JUDGMENT INSTEAD OF AS COSTS: ·*Review on appeal.* Code, section 3869, provides that, where judgment is recovered on a written instrument containing an agreement to pay an attorney's fee, the court may allow certain percentages on the amount recovered, but that no such allowance shall be made unless an action has been begun. *Held*, that where the judgment, signed by the court, allowed attorney's fees on amounts collected by plaintiff's attorney, before suit was begun, and allowance would be corrected on appeal from the judgment, such application being required only when the erroneous attorney's fee was inserted by the court in taxing costs.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

THURSDAY, DECEMBER 20, 1900.

ACTION on a promissory note. The defendant appeals from judgment on a directed verdict.—*Modified.*

*Chas. E. Hunn* for appellant.

*Read & Read* for appellee.

LADD, J.—The evidence shows conclusively that on the twentieth day of April, 1897, the defendant was indebted to the Merchants' & Bankers' Insurance Company, or Theodore F. Getchell, or both, in the sum of $6,000. This was for money advanced for the organization of the defendant company, and premiums on reinsurance. Getchell insists he had no personal interest in the debt, and took the note in suit for the benefit of the Merchants' & Bankers' Insurance Company, and afterwards assigned it to plaintiff, as its secretary. On the other hand, the defendant asserts that the note was executed for the purpose of guaranteeing the payment of certain certificates held by Getchell. But these certificates merely evidenced a debt of the defendant. The company was organized in October, 1896, and the transaction out of which this controversy arose grew out of the transfer of its control from Getchell and his associates to L. E. Seager and those with him. The article relating to guaranty certificates may be set out: "Article VI. For the purpose of promptly providing for the payment of expenses incident to organization, and any losses and expenses that may be subsequently incurred that the money on hand realized from assessments will not promptly pay, a guaranty fund is hereby provided, to be created, not exceeding fifty thousand ($50,000) dollars, and divided into shares or portions of one hundred dollars each, par value, for which certificates shall be issued, signed by the president and secretary of the company, to such persons as may be entitled thereto, which said certificates may be transferred by assignment on the books of the company kept for that purpose, and not otherwise, and the holders of such shares shall be members of this company during the time such certificates are held. Such certificates shall be subject to assessment by the board of directors in an amount not

to exceed ten per cent, when the company is fully organized and ready for business, and be subject to such further assessments as the board of directors may deem expedient and necessary, but no assessment can be for a greater amount than ten per cent of the par value of certificates outstanding, nor can an assessment be made for any other purpose than a temporary advancement to provide for the prompt payment of losses and expenses, and shall be repaid, with interest thereon at the rate of eight per cent per annum, from the moneys realized by assessments upon pledges of its members for insurance and for premiums. The board of directors may, at their discretion, pay up all or any portion of the moneys advanced on certificates of the guaranty fund, and retire such certificates, or any part thereof; and, whenever such fund shall be so paid up and retired, the directors of the company shall thereafter be elected by and from the other members of the company." If, then, the amount advanced was represented by these certificates running to Getchell, the company was expressly pledged to repay it, with interest, at such time as the board of directors, in their discretion, might choose. At the time mentioned the guaranty fund was, by amendment, reduced to $20,000, and from the proceeds of new certificates then issued, $3,300 of this indebtedness was paid. The purpose of the new board of directors appears to have been to extinguish any existing debt by the use of money paid in by members of the new regime. The note sued on covers the balance of this indebtedness, and all but $900 has since been paid.

2 As said, this was for a legitimate debt of the defendant, regardless of whether it was evidenced by certificates running to Getchell, or merely a claim of the Merchants' & Bankers' Insurance Company; and it is not perceived upon what theory this company might make its own note as security, or in guaranty of its own debt. This amounted to nothing else than executing new evidence of an existing indebtedness, stipulating the time of payment. Getchell insisted on some arrangement through which the

return of the money would be assured, and the note was given in response to that demand. ˙ That certain witnesses speak of the note as being security, and the resolution of the board mentions it as a guarantee, cannot alter its character as written evidence of a debt due from the defendant.

I.  The creation of an indebtedness incident to defendant's organization and the conduct of its business is expressly authorized by the article set out, and repayment required. Appellant argues that this could not have been done under chapter 4 of title 9 of the Code of 1873, but points out no clause in the law prohibiting it. Nor have we been able to discover anything antagonistic to such a course, though its wisdom may well be questioned. If the company might lawfully create an indebtedness, surely it had the power to evidence this in writing. And authority so to do was expressly conferred by the resolution of the board of directors in ordering "that the company, by their obligation, guarantee the payment of twenty-seven hundred dollars due Theo. F. Getchell."

III.  The court, as a part of its judgment, allowed $79.41 as attorney's fees. Such fees are not taxable on any sums paid before the commencement of the action (Code, section 3869), and but $50.41 should have been awarded. As the allowance of this fee was a part of the judgment signed by the trial judge, no motion to correct was essential in order to have the error reviewed. Such a fee is not necessarily a part of the judgment. *Spiesberger v. Thomas,* 59 Iowa, 606. But it, as well as other costs, may be made so. The theory of the law is that the trial court must have the opportunity to pass upon every question before it shall become the subject of review. After this opportunity has been afforded, and the ruling had, there is no occasion to raise the point a second time. It is only when a mistake has been made by the clerk in the taxation of costs that a motion to correct is essential before a review may be had in this court, and this solely to obtain a ruling of the trial court. In other words, the appeal is in-

variably from rulings of the trial court or of a judge in a proper case, and only when these are had may this court interfere.   Code, section 3864; *Snell v. Railway Co.,* 88 Iowa, 444; *Allen v. Seaward,* 86 Iowa, 718.   In the last case the judge in vacation directed the clerk, but the matter was never brought before the court.   Here the court expressly allowed attorney's fees on a large amount collected by the plaintiff's attorneys, for which no suit had ever been begun, and the clerk had nothing to do with their. taxation.   A motion to retax would only have called for a second ruling on the same point, and was not essential in order to have the error corrected.   *Fairbairn v. Dana,* 68 Iowa, 231; *Noland v. Lock,* 16 Ala. 52; *Bosley v. Parle,* 35 Mo. App. 232; 5 Enc. Pl. & Prac. 247.   See *Sweney v. Davidson,* 68 Iowa, 386.   The error was specifically assigned, and the judgment will stand corrected as indicated.—MODIFIED and AFFIRMED.