ANDREW GUINN v. THE IOWA & ST. LOUIS R. Co., Appellant.

**Eminent domain:** PRACTICE: VOLUNTARY APPEARANCE: COSTS. A
1 party who voluntarily intervenes without being substituted as a party or notified to defend the action, may also voluntarily dismiss his petition of intervention and is not thereafter within the jurisdiction of the court, and no costs should be taxed against him.

**Costs:** APPEAL. A motion to retax costs is not required to authorize
2 a consideration thereof on appeal, where the question is not the amount but the right to tax any costs.

**Evidence:** CONDEMNATION. In a condemnation proceeding involving
3 only damages caused by the appropriation of the right of way

and the proper construction of a railroad, evidence as to the proper manner of construction is admissible.

**Expert testimony.** In condemnation of right-of-way, the propriety of the manner of construction of the road bed is the subject of expert testimony.

**Evidence:** MATERIALITY. Evidence in a condemnation proceeding, that a railroad company intended to repair an injury caused by constructing its road bed, is immaterial.

**Same.** Evidence as to whether an embankment can be restored, or the cost of restoration, is irrelevant in a condemnation proceeding.

**Instructions:** PRIVATE CROSSINGS. The law does not prescribe the kind of private crossing a railway company should construct. This is left to the company, with the single limitation that it shall be adequate, and an instruction that a grade crossing is the rule in this state, is error.

*Appeal from Appanoose District Court.*— HON. M. A. ROBERTS, Judge.

FRIDAY, OCTOBER 21, 1904.

SUCH proceedings were had as that on the 16th day of April, 1902, a sheriff's jury assessed the damages for appropriating a right of way by the Iowa & St. Louis Railroad Company across forty acres of Andrew Guinn's farm at $300. An appeal to the district court was taken by the landowner, and upon trial the damages were increased to $1,584. The company appeals.— *Reversed.*

*J. G. Trimble* and *F. S. Payne,* for appellant.

*C. F. Howell, J. M. Wilson* and *W. R. C. Kendrick,* for appellee.

LADD, J.— Before trial the Quincy, Omaha & Kansas City Railway Company filed a petition of intervention, alleging that, since the condemnation proceedings were begun and the appeal taken, it had purchased the right of way and

property interests of the defendant and was the real party in interest, and prayed that judgment be entered against the land-owner for costs. It then moved for a continuance, and, this being denied, withdrew its petition, to which plaintiff objected. The court overruled the objection, but seems to have held that the withdrawal did not withdraw intervener from the jurisdiction of the court. At plaintiff's instance it was adjudged to be in default for want of an answer, and upon the conclusion of the trial $200 was allowed as attorney's fees and taxed as part of the costs, and judgment entered against intervener and defendant for all costs. The intervener had not been substituted as defendant, nor notified in any way to defend in the action. It had the perfect right, as it had voluntarily appeared, to voluntarily dismiss its petition of intervention, and withdrawing it was equivalent to a dismissal. *Dalhoff v. Coffman,* 37 Iowa, 283; *Wilson v. Trowbridge,* 71 Iowa, 345; *Woodward v. Jackson,* 85 Iowa, 432. After it had done this, there remained no issue as to it in the case. It was then neither demanding a remedy, nor was anything claimed of it, and its presence in court was evidenced in no way save the court's *ipso dixit* that it remained within its jurisdiction. This, however, did not make it so, and in withdrawing its petition the intervener ceased to be a party to the record. It follows that the judgment for costs was entered without jurisdiction.

*1. PRACTICE: voluntary appearance; costs.*

Authorities cited by appellee to the effect that before the taxation of costs by the clerk may be corrected in this court a motion for that purpose must have been ruled on by the district court are not in point, for the complaint here is not of the amount of the costs, but that any judgment whatever was rendered therefor. *Ainley v. Ins. Co.,* 113 Iowa, 709. In such a case, as the ruling has been once entered, there is no occasion for calling on the trial court to review its ruling again before bringing the matter to this court.

*2. COST: appeal.*

II.   The defendant's railroad runs through the forty acres from the north in a southeasterly direction.   On the forty acres adjoining on the north is a lake.   Along its south side was a bank of earth, which prevented water flowing therefrom on plaintiff's farm. ·The road crossed this lake, and in constructing it a part of the embankment on each side of the track was removed, and this allowed the water to flow from the lake.   The evidence showed that at a cost of $20 the earth could be replaced in the bank.   An engineer was asked whether it was proper, in the construction of the road, to cut the banks and open the ditches.   An objection to this was sustained, on the theory that the defendant was not in a position to urge that its road had not been properly constructed.   It was ruled otherwise in *King v. Ry.*, 34 Iowa, 459.   The damages to be assessed are those " which said owner will sustain by the appropriation of his land for the use of said corporation." This does not contemplate injuries to the realty resulting from the negligent construction of the road.   Such damages may· be recovered in a proper action, but are not elements in fixing the value of the land taken or the compensation to·be allowed the owner.   *Miller v. Ry.*, 63 Iowa, 680.   See *Doud v. Ry.*, 76 Iowa, 438.

*3. EVIDENCE: condemnation.*

Appellee urges that in any event the propriety of the ditches was not a matter of expert evidence, and the competency of the engineer was not shown.   The last of these objections was not urged in the trial court, and the first we do not regard as well taken.   The ditches were excavated for drainage, and whether this was necessary in the safe construction of the roadbed was an appropriate inquiry of persons skilled in such matters.

*4. EXPERT TESTIMONY.*

True, the evidence leaves little, if any, doubt but that a proper construction of the road did not require the excavation of the ditches, and that the embankment could be restored at small expense.   Conceding this, however, the error in the ruling is emphasized, rather than

*5. EVIDENCE: materiality.*

cured as contended, in the instructions, for in the eleventh paragraph the jury was told, in substance, that if the company intended to restore the embankment, and could do so at a cost of $20, and if this would obviate damages from the overflow from the lake, no damages occasioned by cutting the bank of the lake should be considered; otherwise such damages should be allowed. The intention of the railroad company is entirely immaterial. It can neither escape nor incur damages in such a case because of its good or evil purposes. If, in the proper construction of the road, the ditches ought not to have been excavated, neither their existence nor the damages resulting therefrom should have been taken into consideration in *ad quod damnum* proceedings.

III. From what has been said it necessarily follows that evidence as to the character of the soil of the Charitan river bottom ought not to have been received. Whether the

6. SAME.

bank may be permanently restored is not relevant to the issue as to whether it ought to have been disturbed in the proper construction of the road. Evidence that clay for the restoration of the bank could be obtained one thousand six hundred feet away was rightly rejected. Such evidence, as well as the cost, might be appropriate in an action for damages, but not in a proceeding like this.

IV. Near the south side of the land the railroad crosses Spring creek over a trestle bridge consisting of ten spans, in all one hundred and thirty-six feet long. The

7. INSTRUCTIONS: private crossings.

remainder of the way the roadbed is filled to a grade of an average of over four feet above the surface. A serious question in the case was whether the private crossing which plaintiff might demand would be an under or grade crossing. On this feature of the case the court instructed that: " By the term ' adequate ' crossing is meant one equal to what is required; suitable to the case or occasion; fully sufficient; proportionate to the reasonable requirements. But an adequate cross-

ing does not necessarily mean either an over or an under crossing; it may be either, and the landowner may designate the place. The plaintiff in this case insists that the crossing shall be a grade crossing. That is the rule in this State, and, there being no evidence that a grade crossing could not be reasonably provided, it will be your duty to consider that the crossing to be put in will be a grade crossing at such reasonable place as the plaintiff may designate, and will estimate plaintiff's damages accordingly, unless you find there was some agreement to the contrary." Appellant takes exception to that portion in which it is said grade crossings are the rule in this State, and that it must be assumed that defendant will furnish that kind of a crossing. In *State v. Ry.*, 86 Iowa, 304, grade crossings were referred to as the rule in this State, and in *State v. Ry.*, 99 Iowa, 565, in discussing the statute, the court said that, " owing to the topography of the State and the usual size of farms, grade crossings are usually adequate, and hence, are the rule in this State. The intent of section 1268 [Code 1873] plainly is that, when requested, the landowner is entitled to a causeway, a grade crossing, properly guarded, that will be adequate means of crossing; and when, from any cause, this cannot be, he is entitled to have such other means of crossing as will be adequate. * * * Our view of section 1268 [Code 1873] is that adequate means of crossing is what the landowner is entitled to, and, when that cannot be provided by a surface crossing at a reasonable place, it must be by such other or additional means as are adequate." All intended in either of these cases was that, owing to the topography of the country, and the cost of construction, and the convenience of the landowner, private crossings in this State are usually at the surface. In the first case the relief sought was the enforcement of an order by the railroad commissioners to construct an overhead crossing, and in the last to put in an under crossing. The only issue was as to whether existing surface crossings were adequate, and the

court held they were.   In .both, the kind of crossings was
directly involved.   In a case like this the particular man-
ner of crossing is not in issue, and whatever the opinion of
the jury or court, the conclusion would not be binding on
the parties in a subsequent. action to compel the construction
of an adequate crossing.   In *Lough v. Ry.,* 116 Iowa, 31,
an instruction that " whether such adequate crossing will
be a surface crossing or an under crossing you have nothing
to do with in this case " was expressly approved.   See,
also, *Pingery v. Ry.,* 78 Iowa, 438.   The statute expresses
no preference for one kind of crossing over another.   For
all of its provisions it may be open, closed, over the rail-
road or beneath it, so long as the company " shall, when
requested so to do, make and keep in good repair one cattle
guard and one causeway, or other adequate means of cross-
ing the same at such reasonable place as may be designated
by the owner."   The duty of determining the kind of cross-
ing is imposed on the company, with the one limitation that
it be adequate.   Appellee suggests that the evidence was
conclusive that only a surface crossing would be adequate.
We think the record such as to leave that inquiry open, and
that the instruction was erroneous in saying to the jury what
means of crossing defendant would be bound to provide.—
*Reversed.*