T. H. HEMPHILL, Appellee, v. CEDAR RAPIDS and IOWA CITY RAILWAY and LIGHT CO., Appellant.

EVIDENCE: Similar Contract with Others—Railroad Crossings. On the issue whether a railway company had agreed to put in an undercrossing for plaintiff, evidence is admissible that the agents for the railroad had agreed with plaintiff's neighbor to put in such a crossing for the neighbor in connection with the crossing for plaintiff.

EVIDENCE: Parol to Prove Agreement to Provide Railroad Crossing. Parol evidence is competent to show an agreement by a railway company to furnish a railway crossing at a particular point, inasmuch as plaintiff was entitled to a crossing and the point in question was the only available place for a crossing.

RAILROADS: Undercrossings—Duty to Maintain in Safe Condition. A railway company must maintain an undercrossing in a reasonably safe condition, it being shown that the company had agreed to provide the crossing at that point and had left an opening in partial compliance with its agreement.

RAILWAYS: Defective Crossing—Use by Owner—Knowledge of Defect—Contributory Negligence. A landowner is not guilty of contributory negligence in permitting his stock to use a defective crossing unless he knew or ought to have known that it was dangerous *and imprudent* for the stock to use it.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

WEDNESDAY, MARCH 17, 1915.

ACTION at law to recover damages for a horse, killed at what plaintiff alleges was a private under-crossing of defendant's right of way. Trial to a jury; verdict and judgment for plaintiff; and defendant appeals.—*Affirmed.*

*Wade, Dutcher* and *Davis* and *John A. Reed,* for appellant.

*A. E. Maine,* for appellee.

DEEMER, C. J.—Plaintiff is the owner of a tract of land in Johnson County, Iowa, which is intersected by defendant's right of way, over which it runs an interurban railway.

He alleges that by an arrangement with defendant's officials at the time they obtained its right of way over his land, they agreed to give him an under-crossing over the right of way at a point where a bridge was necessary, by reason of the contour of the land, and to take care of the surface water by leaving an opening in the right of way. He also alleged that there was no other place suitable for any kind of a crossing, and that while gates were put in the railway fence at one time for a grade crossing, the company did not furnish that crossing, but took out the gates; and after constructing its railway and putting in a bridge at the place in question, it brought its right of way fences down to the abutments of the bridge; arranged for a private crossing for plaintiff's neighbor, Cole; and left the remainder of the space under the bridge open, so that plaintiff's stock might pass from one part of his land to the other.

He further charged that this space between the bents of the bridge became and was miry at certain times of the year, and that defendant did nothing to keep it in repair; and that some time in April of the year 1912, one of plaintiff's horses mired at this part of the crossing and was drowned in consequence of the miry condition of the ground.

The defendant's answer was, in effect, a general denial; although it admitted the construction of the bridge at the point in question, but alleged that said construction was for the purpose of drainage only and not to give plaintiff a crossing.

II.—Plaintiff, over defendant's objections, was permitted to prove the kind of crossing which the defendant gave to plaintiff's neighbor, Cole. Ordinarily this would be inadmissible; but here Cole was introduced as a witness, and he testified that one of defendant's agents told him (Cole) that they (the defendant) would put in, under the bridge,

1. EVIDENCE: similar contract with others: railroad crossings.

an under-crossing for him with (plaintiff) Hemphill's. This made the testimony complained of admissible.

Plaintiff was also permitted to give oral evidence of what defendant's agents said as to a private crossing for him, when negotiating for a right of way over his land, and when taking the deed.

At the time the testimony was received, the relations to the defendant company of the men with whom the conversations were had were not shown; but these were afterward supplied. If the case depended wholly

2. EVIDENCE: parol to prove agreement to provide railroad crossing.

upon this agreement, there might be some doubt as to the admissibility of the testimony; but it does not do so. Plaintiff was entitled to a crossing of some kind under the law; and under the testimony, which shows that no other place was available, and that a bridge was necessary at the point in question, we think it was competent to show by parol that it was agreed between the parties that the crossing should be at this place. This is particularly so here, because the defendant so located the bridge and so constructed its fences as to leave this the only available crossing whereby plaintiff could get from one part of his farm to the other.

III.—The theory on which the case was tried appears from the following instructions given by the trial court:

"Now, you are instructed that if you should find from the evidence, that the defendant through its authorized agents or representatives agreed to put in a crossing under this bridge for the use of the plaintiff's father and that in building the road and fencing the same the said defendant in any manner attempted to comply with this agreement that then and in that event it was the duty of the defendant company to keep such crossing in reasonable condition for the passage of stock and if it allowed the same to become dangerous and plaintiff's horse was injured or damaged by reason thereof the defendant would be liable and you should so find, but if

you do not so find you will find for the defendant. You are
further instructed that before plaintiff can recover in this
action he must show you by a preponderance of the evidence
that the damage to the horse, if any, was not due to any fault
or neglect on his part. In other words, that he was not guilty
of contributory negligence. By contributory negligence as
used in this instruction is meant the doing of something or
the failure to do something that a reasonably careful and
prudent person would do or would not do under like circum-
stances.''

The case was not submitted, as appellant contends, on
the theory that there was a breach of defendant's duty to
comply with its contract to give plaintiff a crossing, but
upon the proposition that if it attempted to
comply with its contract and left a place open
for plaintiff's stock to pass, in partial compli-
ance with its contract, then it was defend-
ant's duty to keep the crossing in a reasonably safe condition
for the purpose for which it was being used. This theory
of the case seems to be correct. It was the legal duty of the
company to keep its crossings in a reasonably safe condition;
and if it failed in that, it was responsible for all damages
which resulted proximately therefrom. *Miller v. Railroad,*
66 Iowa 546; *Guinn v. Railroad,* 125 Iowa 301.

3. RAILROADS :
undercross-
ings : duty to
maintain in
safe condition.

IV.—Whether or not plaintiff was guilty of contributory
negligence in allowing his horse to use the crossing at the time
he did was made a jury question by the court in its instruc-
tion No. 5½, which was given on its own mo-
tion.

No such issue was tendered by the plead-
ings and the court might well have ignored
the proposition. However, the defendant in-
sists that under the testimony as applied to this instruction,
there should have been a verdict for it. We do not so read
the record. It was, as we think, a jury question. There is

4. RAILWAYS : de-
fective cross-
ing : use by
owner : knowl-
edge of defect :
contributory
negligence.

no testimony that plaintiff knew that the crossing was so dangerous at the time in question as that his horse was likely to mire and drown, and as defendant left the place open and it had been used as an under-crossing, it was under an affirmative duty to keep the place in a reasonably safe condition and plaintiff was justified in using it unless he actually knew or should have known that it was in a dangerous condition and that it was imprudent to use it. The case is somewhat akin to sidewalk cases, where a municipality is under a duty to keep its walks in repair.

We discover no prejudicial error and the judgment must be and it is—*Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.