STEVEN H. KLOPP, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellee.

**APPEAL AND ERROR: Review—Equity Cause—Deference to Opinion of Trial Court.** The rule that due deference is given to the opinion of the trial court applies to the trial of an equity cause heard *de novo* on appeal, especially when the trial court makes a personal examination of the matter in controversy.

**RAILROADS: Undercrossing—Reasonableness—Evidence.** Grade crossings are the rule in this state. Evidence reviewed, and held to show that plaintiff's demand for an undercrossing was unreasonable, and therefore should be denied.

**RAILROADS: Undercrossing—Excessive Cost—Materiality.** A landowner is entitled to an "adequate" crossing, even though the cost be great, but the cost of an undercrossing is a circumstance proper to be taken into consideration with all the other circumstances of the case. So held where the cost of the undercrossing approximately equaled the value of the farm.

**RAILROADS: Undercrossing—Failure to Furnish—Damages.** Record reviewed and held insufficient on which to base a claim for damages for alleged failure to furnish a crossing.

**COSTS: Apportionment—Mandamus.** Record reviewed, in an action of mandamus to compel the construction of an underground crossing by a railway company, and held to be such that the cost should be apportioned. (Sec. 3854, Code, 1897.)

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

FRIDAY, APRIL 7, 1916.

THIS is an action of mandamus to compel the defendant to construct an undercrossing, so that the plaintiff may pass from his land on one side of the defendant's tracks to his land on the other. The question is: Was plaintiff entitled to an underground crossing, or was the grade crossing provided by the defendant an adequate crossing? Plaintiff also asked $500 damages. The defendant resists the action on the ground of

its unreasonableness, the excessive cost, and the fact that
the proposed crossing is not feasible; also on the ground that
plaintiff has now an adequate crossing and one that will
serve him better than the one proposed. The court found for
the defendant, in part at least, but required defendant to move
a small hill which obstructed the view of the track, and to make
some other changes. There is a question, also, as to the taxation
of costs, which were all taxed to the plaintiff.—*Modified* and
*Affirmed.*

Rickel & Dennis, for appellant.

Cook, Hughes & Sutherland and F. L. Anderson, for
appellee.

PRESTON, J.—1. A fact question is presented. It will
be difficult to state the exact situation in the opinion. The
case has been here before, and is reported in 156 Iowa 466.

On the former appeal, it was stated that, as
the evidence then stood, it was doubtful
whether plaintiff was entitled to the relief he
asked. The cause was remanded and some
additional testimony taken, but it does not
change the case as presented before. After the case was
remanded, it was stipulated that the testimony given before
should be used and such additional testimony as either party
might offer, and the case is presented in this court by using
the abstract on the first appeal and attaching thereto another
abstract presenting the new matter. A number of photographs
were used on the trial, and the trial court made a personal
examination of the crossing and the situation. The case was
tried as in equity; and the rule so often stated is that we
should and do give some weight to the opinion of the trial
court; but, under the circumstances of this case, we ought,
perhaps, to give it more weight, because the trial judge saw
the situation as the witnesses attempted to describe it.

There is so much of the evidence, and it would serve no

1. APPEAL AND
   ERROR: review:
   equity cause:
   deference to
   opinion of trial
   court.

useful purpose to set it out in detail, that we shall not attempt to do so, but shall state it in a general way, as best we can, with our conclusions. Plaintiff introduced evidence in support of the issue that his grade crossing in question was inadequate, because, as he claims:

2. RAILROADS: under-crossing: reasonableness: evidence.

1. It was too steep, and only half loads could be hauled up and over the crossing.

2. In wet and icy weather, it could not be used, because horses and cows would slip and fall.

3. It is dangerous to pass over the tracks either with loaded teams or driving cattle, for the reason that, as one is going up the hill from the north side of defendant's tracks to the south side, trains from the east cannot be seen until one is almost upon the tracks, and in going from south to north across the tracks, trains from the west cannot be seen, because of a sharp curve and cut, some 40 or 50 rods to the westward.

4. The gates were so arranged that a person might be trapped with his team and wagon and hit by a train while opening the same.

5. Because of the liability of teams and wagons to go straight from the north over the steep curve or embankment where the roadway makes a turn to go north toward plaintiff's land.

6. Because the crossing in question does not connect both portions of plaintiff's land, but, in order to reach his land on the north, the defendant built a portion of the roadway across the land of another.

The plaintiff himself gave testimony to sustain these different propositions, and introduced a number of other witnesses, all of which tended to sustain the plaintiff's claims; but we are of opinion that the weight of the testimony is with defendant. It is conceded by the defendant in open court that the place pointed out by the plaintiff is the cheapest place on plaintiff's land where an underground crossing could be built.

Perhaps we should have before stated some of the main facts in the case. Plaintiff claims he is the owner of land on either side of defendant's right of way; he has 29 acres north of the railway and 4 acres south. A part of the right of way was acquired from him in 1906. For many years, defendant had owned a right of way 100 feet in width, running through plaintiff's farm, on which its tracks were laid. The right of way and tracks at the place in question formed a pronounced curve, and were also upon a heavy grade. In 1906, defendant determined to straighten its track and reduce the curves and grade, and found it necessary to condemn a small wedge-shaped piece of land, belonging to plaintiff and containing 1.14 acres, north of the track. The right of way for all this distance through plaintiff's land is upon the north side of a steep hill, and plaintiff's land on the south side of the track is about 40 feet higher than on the north side. Defendant claimed that at no place could a crossing of any character be constructed at right angles or obliquely across the right of way without making a grade of more than 30 per cent. and so steep that it could not be in any manner traveled; that to construct an undercrossing where plaintiff desires one would cost more than $8,000, and it would then be at an unreasonable grade; that, at the time defendant took possession of the land condemned, in 1906, it constructed for plaintiff an adequate crossing, and has since then kept it up, at the only place where a crossing could be constructed, having in view the reasonable use by plaintiff.

The trial court in its finding stated, among other things:

"The railroad was located across this land many years ago, and a grade crossing established, but, some 6 or 7 years ago, the defendant company, in straightening its line, condemned enough additional land for a double track, extending their ground northward, which necessitated a prolongation and some variations in the then existing crossing, and a crossing was accordingly constructed across both tracks and went to the east line of plaintiff's land and almost directly north of

the house and barn, the approach to which is the only feasible one from the south or from his buildings; but the plaintiff insists that this grade crossing is not adequate, and demands an underground crossing which would pass through the embankment several hundred feet westward from the present crossing, and then turn east along the right of way south of the track, terminating at or near the south end of the present crossing. The evidence shows that the north gate to the present crossing is about 30 feet from the north rail. It also shows that, to a person approaching the crossing from the south, the view of trains coming from the west is cut off by a mound of earth on the right of way and close to the south side of the track. These facts and the steepness of the grade of the north approach are the chief grounds of complaint that the plaintiff makes against the present crossing, and on which he makes his demand for an undercrossing, which would cost from $5,000 to $8,000, and for the purpose of enabling him to reach land worth about $3,000. While the expense is not necessarily controlling in what constitutes an adequate crossing, we should not entirely lose sight of it, especially when it is as startling in amount as the record shows it would be in this case, where the expense would be, according to plaintiff's evidence, about equal to the entire value of the farm at the present time.''

The court further says:

''Having personally viewed the premises, the court believes that, if the south gate to the present grade crossing were moved back to or near the south line of defendant's right of way, and the bank or small hill of dirt were moved sufficiently to enable a person approaching the track from the south to see approaching trains from the west, and the north gate moved back, say, 20 feet to or near the bottom of the grade, the plaintiff would have an adequate means of crossing, and that there could be no need of an undercrossing, so far as danger is concerned. I further find and believe from the evidence that a team that can haul a load from the railroad up to the plaintiff's house, and other buildings, can haul the

same load up the grade from his field to the railroad. The ascent is about the same on both parts of the road or lane. It seems that the plaintiff has used the present crossing ever since it was put in, and there is no showing that he has sustained any damage or injury in doing so, owing, no doubt, to his care and caution in crossing the track.''

Here the court fails to find that the claims and demands set forth in plaintiff's petition and amendment are reasonable, and they are consequently denied. The decree did provide for making the changes suggested by the court, and it is stated by appellee that the changes have been made by it, at considerable expense.

On the first trial, plaintiff did not introduce any witnesses making an estimate of the expense in connection with the proposed underground crossing; but on the second trial, his engineer estimated the cost of the proposed crossing at about $5,400, not including engineering and incidental expense. According to the testimony of defendant's engineer, the type of crossing proposed by plaintiff, or his engineer, was different from the standard crossing used by the defendant company and unsuitable for the purposes intended. Plaintiff did not figure on reinforced concrete. The defendant's engineer places the cost of an underground crossing, properly constructed, at about $7,000 or $8,000, or more.

3. RAILROADS: under-crossing: excessive cost: materiality.

We think the weight of the evidence shows that the present crossing is no steeper than many highways. The alterations in the crossing required by the court obviate plaintiff's objection that the view of the crossing is obstructed. Considering all the circumstances, which we have not attempted to enumerate, our conclusion is that plaintiff's demand for an underground crossing is unreasonable, and we find, also, that, with the alterations required by the trial court, the present crossing is adequate.

There is no serious dispute between the parties as to the law of the case. Plaintiff contends that, if a party is entitled

to an adequate crossing, under Sec. 2022, Code Supp., 1913, then the cost of construction could not be pleaded as a defense, so as to defeat the owner's right to an adequate crossing. They say that the cost may be taken into consideration in determining the place where the crossing shall be placed, but that that question is not presented here. Plaintiff cites only the case of *Herrstrom v. Newton & N. W. R. Co.*, 129 Iowa 507, and cases therein cited, on the question of the cost. In that case, at page 512, we said, in regard to an overhead crossing:

"It is urged, however, that, as the cost of an overhead crossing will greatly exceed the benefits to be derived by the landowner, the defendant should not be required to furnish it. Undoubtedly, this should be taken into account in deciding upon the character and location of the crossing, but it is not a defense. The right of way is acquired upon the condition that an adequate crossing will be furnished the owner (*State v. Mason City & Ft. Dodge Ry.*, 85 Iowa 516), and this without reference to the cost involved. Such cost may be kept in view in determining the grade of the road and through what land it shall be located, but will not defeat the owner's right to an adequate crossing after his farm has been severed by the appropriation of the right of way, especially as the right to such crossing is conceded in estimating the compensation to which he is entitled. *Guinn v. Railway*, 125 Iowa 301. If, then, the grade crossing was impracticable as an adequate means of crossing from one portion of the farm to the other, as the jury found, it must be rejected, and the overhead crossing, conceded to be adequate, adopted in its stead, even though this may be at considerable expense to the railroad company."

As before stated, the question of cost is not controlling, and, under the authorities, is not a defense; still it is a circumstance properly to be considered, with the other facts in the case, and it has been held that, while convenience and profit to the landowner and expense to the company are proper to

be considered, neither, taken alone, is necessarily a ground for making or refusing an order like that requested. The question is whether the causeway, with proper gates and guard, is adequate. *State v. Burlington, C. R. & N. R. Co.*, 99 Iowa 565. In the same case, we said that, under the law, the landowner is entitled, not to the most convenient or profitable means of crossing, but to adequate means.

We have also held that the rule in this state is for a grade crossing, and it is only when it is unreasonable and inadequate that any other may be required. *Schrimper v. Chicago, M. & St. P. R. Co.*, 115 Iowa 35, at 42 and 43.

In regard to what constitutes an adequate crossing, we said, in *Truesdale v. Jensen*, 91 Iowa 312, at 314:

"The location and character of such a crossing must be determined with a due regard for all the interests involved in its construction and maintenance. Among these are the reasonable use which the landowner desires to make of it, its expense, and the effect it will have upon the operation of the railway and the safety of life and property. The landowner cannot dictate the kind of crossing he will have, nor the place where it shall be located."

This was cited and approved in the *Schrimper* case, *supra*, where it was said that neither the landowner nor the railroad company may act unreasonably or arbitrarily with reference thereto.

Without further discussion, it is our conclusion that the court rightly refused to grant plaintiff an underground crossing.

It should have been stated that, in the condemnation proceedings in 1906, the defendant company took from the plaintiff 1.14 acres of ground, which was not of great value, and yet plaintiff was paid for this strip $500. On the former trial of this case, the jury allowed plaintiff $1.00 damages. The evidence upon this appeal is not materially different at

4. RAILROADS: under-crossing: failure to furnish: damages.

this point from that on the former trial, and we agree with the trial court that the evidence did not warrant the allowance of damages.

2. The trial court taxed all the costs to the plaintiff. We think the costs should be apportioned. While the court, refused to grant plaintiff an underground crossing, it did order that, within 60 days, the defendant move the south gate at the present grade crossing back to or near the south line of its right of way, and cut down the hill or embankment that stood near the south rail of the south track sufficiently low to enable a person approaching the crossing from the south to see trains coming from the west at the point in the road beyond the plaintiff's west line, and to move the north gate back 20 feet, or to the bottom of the grade, as plaintiff may elect, and to so maintain the crossing in the future. This was done in order that the crossing might be an adequate one. The plaintiff was successful in his action to that extent. There is some difficulty in estimating just what proportion should be paid by each one. The question involved in the case, or the main question, was whether there was an adequate crossing, and this was involved in the whole case. Witnesses were introduced on the question of damages, and on this part of the case the defendant was successful, so that no part of the costs on the question of damages should be paid by the defendant.

5. COSTS: apportionment: mandamus.

Our conclusion is that the defendant should pay one third of the cost of both trials in the district court and in this court. As so modified, the judgment of the district court is—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.