JOHN POST, Respondent, *v.* WEST SHORE RAILROAD COMPANY et al., Appellants.

An undertaking in a deed, on the part of the grantee to perform certain acts, becomes, on delivery of the deed to and acceptance by him, effectual as a contract on his part to perform the undertaking, and upon refusal on his part to perform, an action for specific performance or for damages, is maintainable.

The right conferred upon railroad companies by the General Railroad Act . (Subd. 5, § 28, chap. 140, Laws of 1850; chap. 133, Laws of 1880), to use a highway for the purposes of its road, on obtaining consent of the Supreme Court, is subject only to the duty to restore it to its former state, "or to such state as not unnecessarily to have impaired its usefulness," and when it becomes necessary for the performance of the duty of

restoration to remove the highway in whole or in part outside of its original limits, the corporation may acquire by purchase the lands required for the purpose, and the reconstructed highway in the new location becomes part of the legal highway.

The commissioner of highways of a town has no power to control the location of a railway within the line of a highway of the town, and while, for any failure of the railroad company in the performance of the duty of restoration, he is authorized to maintain an action for its performance, or for damages sustained by the town (Chap. 255, Laws of 1855), it is for the company in the first instance to determine the method of restoration, it taking the risk of its act being in accordance with its obligation, and the commissioner has no power to dictate how the restoration shall be accomplished.

Plaintiff, who was the owner of a farm on the westerly shore of the Hudson river, conveyed to a railroad company, for the purposes of its road, the fee of a strip of land across his farm, which included a highway. The deed contained a clause to the effect that the company would reconstruct and restore the highway and "place the same along the westerly line and upon" the premises conveyed; also "to construct a good and convenient crossing over the said railway premises to the highway reconstructed as aforesaid." The company constructed an embankment on the easterly side of the strip, from fourteen to twenty feet high, cutting off all approach over the highway to plaintiff's buildings from the south; it made an approach on the north side of the farm, enabling plaintiff to reach the highway in that direction. In constructing the embankment, the company obstructed the highway so as to prevent its use. The commissioner of highways threatened legal proceedings; he also objected to placing the highway on the strip sold. The company thereupon purchased of plaintiff a strip of ground for the highway on a hill above its road, over which it constructed the highway. Upon executing the second deed, plaintiff expressly refused to release the company from the obligation of the covenant in the first. In an action for specific performance of said covenant, *held,* that the railroad company, by acceptance of the deed, became bound to perform the obligation recited therein, and upon its refusal so to do, the action was maintainable; that the claim that the obligation was void, as against public policy, because it provided for an abandonment of part of an existing road without the sanction of the commissioner of highways of the town was untenable, as his consent was not necessary; also that, for the same reason, the fact that he objected to the proposed change was not an excuse for non-performance of the undertaking.

*It seems* that, assuming the company had no right, as between itself and the town, to locate the reconstructed highway as provided in the covenant, plaintiff was still entitled to enforce the contract so far as to give him a road as provided for, although it would no longer continue a legal highway.

Also *held,* that the sale by plaintiff to the company of another strip of land for the highway, and its construction thereon, was not a waiver of the covenant.

Plaintiff's evidence was to the effect that his damages for the non-performance of the covenant were in the aggregate $5,000; the damage arising from the non-construction of the road and that from failure to build the crossing was not separately stated. By stipulation of the parties, the court, after the testimony was in, viewed the premises, and there was evidence showing the increased cost of carrying on the farm, because of the obstruction of the old highway. The court found that plaintiff's damages, by reason of the failure to construct the road as provided in the deed, was $2,500, and directed judgment for that amount; also that the company should construct a crossing under its road to enable plaintiff to reach the old highway. *Held,* no error.

Subsequent to the commencement of the action, the company became insolvent; its property and franchises were sold on foreclosure and became the property of a new company, organized to operate the road, which company was brought in as a party defendant. *Held,* that the new company, on becoming vested with said property and franchises, became bound by the covenant; but that it was not liable for the damages for depreciation in value of the use of the farm, which accrued prior thereto.

Reported below, 50 Hun, 301.

(Argued October 17, 1890; decided December 2, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 8, 1888, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to enforce the specific performance of an alleged covenant for the reconstruction and restoration of a public road and the construction of a railroad crossing, contained in a deed executed by the plaintiff to the New York, West Shore and Buffalo Railway Company, dated February 8, 1882, conveying a strip of land running northerly and southerly through the plaintiff's farm in the town of Catskill in the county of Green in this state, 130 feet in width and 1,500 feet in length, which strip of land included the public highway through said plaintiff's farm, known as the Catskill and Saugerties road.

The plaintiff, prior to and at the time of said conveyance, was the owner of a valuable farm of 260 acres on the westerly shore of the Hudson river, through which ran northerly and southerly a rocky ridge known as Kalkberg mountain, dividing the low lands of the plaintiff's farm on the river from the upland.

Along the easterly foot of the ridge ran the Catskill and Saugerties highway, communicating with Catskill on the north and with Saugerties and other places on the south. The plaintiff's house and farm buildings were located near to and on the easterly side of the highway.

In 1882 the New York, West Shore and Buffalo Railway was engaged in the construction of its railway, the line of which at this point ran within and along the highway, across the plaintiff's premises. The railway company, in view of this fact, purchased from the plaintiff the strip mentioned, and the deed of conveyance from the plaintiff contained the following clause: "The party of the second part (the railway company) is to reconstruct and restore the public road and place the same along the westerly line of and upon the aforesaid premises. The party of the second part is to construct a good and convenient crossing over the said railway premises to the highway reconstructed as aforesaid." The conveyance to the company was in terms of "fee simple." The company thereupon took possession of the highway and raised an embankment on the easterly side of the strip so conveyed, for the track of its road, from fourteen to twenty feet high across the plaintiff's farm, and completely shut off all approach to the plaintiff's buildings over the highway from the south, there being a ravine on the southerly side of his land, which embankment also prevented his reaching the highway to the north, except by climbing the railroad embankment near the northerly line of his premises. Neither the New York, West Shore and Buffalo Railway Company, nor its successor in title, the West Shore Railroad Company, nor the New York Central and Hudson River Railroad Company, the lessee of the West Shore Railroad Company, has constructed the highway on the

westerly side of the 130 feet strip, as provided in the deed. But in the fall of 1882, the grantee in the deed purchased from the plaintiff another strip of land across his farm, fifty feet in width on the top of the mountain for a public road, and opened it as a public road and connected it at the north and south with the old highway, and it has since been used by the public as such in place of the original road at the foot of the hill. The company also made an approach up the embankment on the north side of the plaintiff's farm, to enable the plaintiff to reach the old highway north of his premises.

The plaintiff, by reason of the situation, when he desires to go from the 145 acres of his farm on the river to Saugerties or any other market south of his premises, is compelled to first go north, climbing the embankment to the junction of the old road with the new road, across the hill, and then turn southerly and go over the hill road until it meets the original highway south of his lands, a route much less convenient than the former one, thereby increasing on each trip the distance to be traveled about one and a quarter miles. In respect to the new road and the purchase of the strip fifty feet in width therefor, upon which one of the points made by the defendants is based, it appears that in constructing the embankment the railroad company blocked and obstructed the old highway so as to prevent its use, and the commissioner of highways threatened legal proceedings; and it also appears that he objected to placing the highway on the 130-foot strip, on the ground that horses would be frightened, etc. The original company thereupon applied to the plaintiff to purchase a strip on the hill for the highway, and did make such purchase, paying the plaintiff $500 for the land. But the plaintiff expressly refused to release the company from the obligation under the covenant in the original deed, and insisted that the company should build the road on the west side of the 130 feet as provided therein.

It was shown on the part of the defendants that the construction of a highway under the hill, as provided in the covenant, would, by reason of the blasting which would become

necessary, and other difficulties, be very expensive, and would
cost from $12,000 to $14,000, and that the company had
expended from $6,000 to $10,000 in constructing the road
over the hill.

Subsequent to the commencement of this action the New
York, West Shore and Buffalo Railway Company became
insolvent and its property was sold on foreclosure, and was
purchased by individuals who subsequently conveyed it to a
new corporation, the West Shore Railroad Company, which
latter company leased it by a perpetual lease to the New York
Central and Hudson River Railroad Company. The two latter
corporations were brought in as parties defendant.

There was proof tending to show that the value of the
plaintiff's farm had been greatly impaired by the obstruction
of the old highway, and that it would be worth $5,000 more
than it now is if the covenant in the original deed had been
performed. The judgment of the court awarded the plaintiff
$2,500 as damages for the failure to construct a road as pro-
vided in that deed and adjudged that the defendant, the West
Shore railroad, should construct a crossing under its road at a
point indicated, to enable the plaintiff to reach the old highway
and the new road over the hill.

*Hamilton Harris* for appellants. The judgment directing
the payment of $2,500 for damages for failure to construct
the highway west of and adjoining railroad tracks is errone-
ous. (Laws of 1850, chap. 140, § 28; 3 R. S. [8th ed.] 1751;
*M. & B. P. R. Co.* v. *Snediker*, 18 Barb. 317; *Dix* v.
*Shaver*, 14 Hun, 392; *F. E., etc., P. R. Co.* v. *Payne*, 15 N.
Y. 583; 2 R. S. [8th ed.] 1347, 1348; 2 Herman on Estoppel,
§§ 825, 1050, 1149; *In re Cooper*, 93 N. Y. 507; *Embury*
v. *Connor*, 3 id. 511; *Brown* v. *Brown*, 30 id. 519, 541; *N.
Y. R. Co.* v. *Rothery*, 107 id. 316; 1 Sutherland on Damages,
812.) The court below erred in directing the construction of
an undercrossing. (*Wademan* v. *A. & S. R. Co.*, 51 N. Y. 568;
*Clarke* v. *R. L. & N. T. R. Co.*, 18 Barb. 350; *Trustees, etc.,*
v. *Thatcher*, 87 N. Y. 311; Fry on Spec. Perf. §§ 361, 1008.)

*J. A. Griswold* for respondent. The New York, West
Shore and Buffalo Railway Company, the original grantee
from the plaintiff, by accepting the deed and using and
occupying the land under it, became bound by the cove-
nants, stipulations or conditions contained in the deed to con-
struct the road and farm crossings. (*Aiken* v. *A., V. & C.
R. R. Co.,* 26 Barb. 289, 291 ; *A. D. Co.* v. *Leavitt,* 54 N.
Y. 35–42 ; 50 Barb. 135 ; 24 id. 635 ; 22 id. 646 ; *Country-
man* v. *Dick,* 13 Abb. [N. C.] 110 ; 87 N. Y. 400.) The
defendant, the New York, West Shore and Buffalo Railway
Company, and the New York Central and Hudson River
Railroad Company, are presumed to have had, and did actually
have, full notice of the covenants and conditions contained in
the plaintiff's deed, and were bound by them. (*A. D. Co.* v.
*Leavitt,* 54 N. Y. 35 ; *Countryman* v. *Deck,* 13 Abb. [N. C.]
110 ; *P. Ins. Co.* v. *C. Ins. Co.,* 87 N. Y. 400, 408.) Even
if the covenants did not run with the land, in equity the
intention of the original parties will be enforced against the
subsequent grantee, who took the land with notice of such
intention. (*Whitmore* v. *Bruce,* 118 N. Y. 320–322 ;
*P. Ins. Co.* v. *C. Ins. Co.* 87 id. 400, 408 ; 15 Alb.
L. J. 506 ; 3 Edm. Stat. 627, § 28, subd. 5.) The court
had the right to award a part of the specific relief asked
for, the construction of a good and convenient crossing,
as specified in plaintiff's deed, and as a favor to and in the
interest of the defendants to award compensation in lieu and
instead of specific performance in constructing the road which
the defendant, the West Shore and Buffalo Railroad Company,
had made impracticable to perform without much greater
expense than the compensation awarded by the court. It is
now held the court may, in the same action for specific per-
formance, award full compensation or damages instead.
(*Henderson* v. *N. Y. C. R. R. Co.,* 78 N. Y. 423 ; *Wademan*
v. *A. & S. R. R. Co.,* 51 id. 568 ; *Barrick* v. *Shifferdicker,*
1 N. Y. Supp. 21.) The court (1) properly awarded specific
performance as to part of the relief asked for, that is, the con-
struction of the under-grade crossing, to go from that part of

plaintiff's farm east of the railroad embankment to that part west of it, and all markets north and south. And (2) compensation for not building the road west of the railroad embankment in the interest of and as less expensive to defendants, the cost of the construction of which, as defendants proved, would have been over $12,000. (*Jones* v. *Seligman*, 81 N. Y. 191–195 ; 3 Edm. Stat. 635, 636, § 44; 12 Barb. 228.) Defendants, on the trial, made objection that the stipulation or covenant in the deed " to reconstruct or restore the public road," etc., was illegal, as in some way injurious to the public or to control the town authorities, and citing cases holding that an agreement by a railroad company with the owner of land that a depot or the terminus of the railroad should be on his land or at some particular place was void, as against public policy. This objection is groundless here. (*Tinkham* v. *E. R. Co.*, 53 Barb. 393 ; McMaster's R. R. Law, 62.) The plaintiff can recover against the defendant, the West Shore Railroad Company (the present owner in fee of the railroad and the land sold by the plaintiff), for compensation to the plaintiff on account of the non-construction of the road and crossing prior to December 5, 1885, when that company obtained title as decided. (Pars. on Cont. 231, 232 ; 2 Black. Comm. 327; *Van Rensselaer* v. *Bonesteele*, 24 Barb. 365 ; *Main* v. *Feathers*, 21 id. 646 ; *McMahon* v. *N. Y. & E. R. R. Co.*, 20 N. Y. 470, 471 ; *Cott* v. *L. R. R. Co.*, 36 id. 213 ; *Aiken* v. *A., etc., R. R. Co.*, 26 Barb. 289 ; *Graham* v. *Chrystal*, 2 Keyes, 21–25, 26.)

ANDREWS, J.    The New York, West Shore and Buffalo Company, by the acceptance of the deed of February 8, 1882, became bound to perform the obligation recited therein to locate the highway on the westerly side of the strip of land conveyed by the deed, and to construct a crossing for the use of the plaintiff. The undertaking of the corporation was a part of the consideration of the grant, and although the deed was not signed and sealed by the corporation, it became effectual on delivery to and acceptance of the same by the grantee as a con-

tract on its part to perform the undertaking recited (*Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35); and upon a refusal of the company to perform, the plaintiff was, according to the general rule, entitled to maintain an action for specific performance or for damages. It is not denied that the West Shore Railway Company, the successor in title of the original corporation, on becoming vested with the rights and property which belonged to its predecessor, also became subject to and bound by the same obligation in respect to the highway and the railroad crossing created by the deed of February 8, 1882, which before rested upon the grantee therein alone. The deed under which the West Shore Railroad Company acquired its title is not printed in the case, and so far as appears that company may have expressly assumed the performance of the obligation of the prior company. If that fact is material, it must here be assumed.

The point is now made in behalf of the defendants that the contract between the plaintiff and the New York, West Shore and Buffalo Railway Company is void as against public policy, because as is claimed, it is a contract between private parties providing for the abandonment of a part of an existing highway, and the substitution of a new location to take the place of the highway so abandoned, without the sanction of the commissioner of highways of the town. We are of opinion that this contention cannot be supported.

The New York, West Shore and Buffalo Railway Company did not acquire its right to construct its road upon and along the Catskill and Saugerties highway as against the public by virtue of its deed from the plaintiff of February 8, 1882. The right to use the highway for the purpose was vested in the corporation by the General Railroad Act on obtaining the consent of the Supreme Court, subject only to the duty to restore it to its former state, " or to such state as not unnecessarily to have impaired its usefulness " (Laws of 1850, ch. 140, § 28, subd. 5; Laws of 1880, ch. 133), and when it becomes necessary for a railroad company, in order to discharge the duty of restoration, that the highway interfered with should

be removed in whole or in part outside of its original limits, the corporation may acquire, by purchase or condemnation, the lands necessary for the purpose, and the reconstructed highway in the new location becomes a part of the legal highway. (*People ex rel. Green* v. *Dutchess & Columbia R. R. Co.*, 58 N. Y. 152.) The corporation has in general the right to determine the route of its road, except where its line is coincident with the route of a highway, subject to the right given by the statute to parties interested to apply for a change of location in the manner provided.

The commissioner of highways is vested by statute with the care and supervision of the highways of the town (1 Rev. St. p. 502, § 1), but this, we think, gives him no power to control the location of the railroad within the line of the highway. That power is vested in the railroad corporation, subject to the approval of the Supreme Court. The statute requires notice of the application to the court to be given to the highway commissioner. But his consent to the location of the railroad within the limits of the highway is not required, and if given would confer no authority upon the company in addition to what it before possessed. So, also, in respect of the duty imposed on a railroad company whose road is located in a highway to restore it to its former state, or to such state as not unnecessarily to impair its usefulness. The duty is solely a corporate duty which the company is bound to perform, and for any failure in its performance, in addition to other remedies, the commissioner of highways is authorized, by chapter 255 of the act of 1855, to maintain an action to enforce the performance, or for damages sustained by the town from non-performance. But it is for the company in the first instance to determine the method of restoration. The responsibility is not divided between the company and the commissioner. The obligation is cast upon the company, and "it takes the risk of its act being in accordance with its obligation." (JOHNSON, J., *Wademan* v. *Albany, etc., R. R. Co.*, 51 N. Y. 570 ; see, also, *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 id. 302; *People* v. *N. Y., N. H. & H. R. R. Co.*, 89 id. 266.)

In the present case the company, by the deed from the plaintiff, acquired the fee to the highway, subject to the public easement, and additional land adjoining sufficient for the highway when changed.    We think the contract between the parties providing how the restoration should be made was legal.    The public was not concluded, and its right of action for a failure by the railroad company to perform its statutory duty remained unimpaired.

It is further contended that the performance of the contract, on the part of the railroad company, was prevented by the action of the town commissioner.    It appears that in the fall of 1882, he objected to the construction by the company of the new highway under the hill for prudential reasons.    The answer heretofore given to the point made that the contract was opposed to public policy, applies here also.    The commissioner could not dictate how the work of restoration should be accomplished.    It might be very reasonable that the company should desire to consult the wishes of the town officers on the subject, and thereby avoid any future question or difficulty. But the covenant with the plaintiff was not discharged by the objection of the commissioner, for the company was under no legal compulsion to follow his direction in the matter.    It certainly does not appear that the construction by the company of the highway, at the place agreed upon between it and the plaintiff, would not have satisfied the statutory duty resting on the company.    Moreover we think it is a very grave question whether, assuming that the company had no right as between itself and the town to locate the road under the hill, the plaintiff was not, nevertheless, entitled to enforce the contract so far as to give him a road for his use at the place indicated.    The main purpose of the contract was to insure the plaintiff a convenient road to and from his premises.    This the plaintiff could have provided, although the road should no longer continue a public legal highway.    (Sto. Eq. Jur. § 779.)

The point that the plaintiff waived the provision in the contract by selling to the company the land for the road over the hill and receiving pay therefor, followed by the construc-

tion of the hill road by the company at large expense, is not supported by any facts proved or found, and in addition, which alone is conclusive, the defendants' counsel did not request any finding on the subject; nor is the point raised by any exception in the case. The facts found show that there was no waiver, and that in the negotiation which resulted in the second purchase, the plaintiff expressly refused to release the company from the original contract and insisted upon the road provided for therein. Under such circumstances there could be no estoppel.

The point that there was no evidence to justify the court in awarding $2,500 damages for the non-construction of the road provided for in the covenant, is not, we think, well taken. The witnesses placed the damage to the plaintiff's farm by reason of the obstruction of the old highway and the failure to construct a new one under the hill, in the aggregate at $5,000. The claim is that as the damages arose from two causes, the non-construction of the road and the failure to build the crossing, and as the damage from each cause was not separately stated by the witnesses, they could not be separated by the court in its findings. But by stipulation of the parties the court, after the testimony was in, viewed the premises. There was evidence in the case showing the increased cost of carrying on the farm by reason of the plaintiff being cut off from the use of the old highway and being required to use the hill road in the transportation of the products of the farm, enough, we think, to justify the specific finding in question. The defendants cannot justly complain of any injustice. By the judgment they have been relieved from a specific performance of the contract to construct the road, which they proved would cost $13,000, and in lieu of such performance a payment of $2,500 damages was adjudged.

There was no error, we think, in decreeing a specific performance of the contract to construct a crossing, nor in requiring that it should be under and not over the track. (See *Jones* v. *Seligman*, 81 N. Y. 191.)

There was error, we think, in charging the West Shore

Railroad Company with damages at the rate of $200 per year, which accrued prior to December 5, 1885, the date when that company obtained. its title. The sum of $600 should, therefore, be deducted from the judgment, and as amended, the judgment should be affirmed, without costs in this court to either party.

All concur.

Judgment affirmed.