ABRAM SPEER, respondent,

*v.*

ERIE RAILROAD COMPANY, appellant.

[Argued November 7th, 1904. Decided March 6th, 1905.]

A deed to a railway company contained a covenant that the company would provide the grantor with a suitable and convenient road crossing across the track of said railway where the grantor might direct. In accordance with the deed, a grade crossing was built and used for years. The defendant, which had succeeded to the grantee's title and franchises, in obedience to a decree of the court of chancery pursuant to the statute, elevated its tracks so that the grade crossing could no longer be maintained, except by constructing approaches on the railroad company's land,

which would necessitate a detour, or on the complainant's land, which would necessitate an elevation. The complainant, who had become the owner of the land, refused to assent to either method, and filed a bill for specific performance of the covenant.—*Held,* (1) that specific performance of the covenant having become impossible without its fault, the railroad company could not be compelled to substitute for the grade crossing a tunnel under the track, the cost of which would exceed the value of the land to be benefited thereby; (2) that the bill might be retained, if the complainant so elect, in order that the damages sustained by reason of the destruction of the crossing might be ascertained by the court of chancery.

On appeal from a decree advised by Vice-Chancellor Stevens, whose opinion is reported in *64 N. J. Eq. (19 Dick.) 601.*

*Mr. Cortlandt Parker, Mr. Charles L. Corbin* and *Mr. Cortlandt Parker, Jr.,* for the appellant.

*Mr. Halsey M. Barrett* and *Mr. Richard V. Lindabury,* for the respondent.

The opinion of the court was delivered by

SWAYZE, J.

The facts of the case are stated in the opinion of the vice-chancellor. The bill was filed for the specific performance of a covenant in the deed from John A. Speer to the Montclair Railway Company, of which the defendant is the successor. The covenant required the railway company to provide the grantor "with a suitable and convenient road crossing across the track of said railway," where the grantor might direct. The decree directed the railroad company to construct a tunnel through its embankment and across its right of way twelve feet wide and twelve feet high, and to maintain the tunnel at all times thereafter.

The rights of the complainant depend upon the provision in the deed, and not upon section 14 of the General Railroad law of 1873 (*P. L. 1873 p. 88; Rev. 1877 p. 929,* as amended in 1891; *2 Gen. Stat. p. 2661*), nor upon the charter of the Montclair Railway Company. Section 14 of the General Railroad law, as originally passed, applied only to companies in-

corporated under the act. It is not necessary now to consider whether the clause subsequently inserted could affect railroads existing under a special charter, for there is no proof that the Montclair railway, or either of its successors, is within the terms of the description. The defendant is the lessee of the New York and Greenwood Lake Railway Company, which acquired by foreclosure sales the property and franchises of the Montclair Railway Company. The last-named company was incorporated in 1867. *P. L. 1867 p. 301.* The provisions of its charter as to road crossings differ from the provisions of the General Railroad law, in that the charter requires the railway company to construct and keep in repair bridges over or under the railway, where any public or other road shall cross the same, and omits the provision as to wagon ways where the railroad intersects the farm or lands of an individual. The provision as to the crossing of roads is intended for the protection of the public who have the right to travel therein, and is applicable only to roads in which the public have such a right; these are public roads, private roads and by-roads. *Green* v. *Morris and Essex Railroad Co., 24 N. J. Law (4 Zab.) 486, 490; Wood* v. *Hurd, 34 N. J. Law (5 Vr.) 87.*

The provision as to wagon ways in the General Railroad law is intended for the benefit of individual landowners, to secure them access from one portion of their lands to another, notwithstanding the construction of the railroad. The language of the General Railroad law is similar to the language commonly used in railroad charters before the incorporation of the Montclair railway in 1867. Camden and Amboy Railroad (*P. L. 1830 p. 88*); New Jersey Railroad and Transportation Co. (*P. L. 1832 p. 104*); Morris and Essex Railroad (*P. L. 1835 p. 29*); Morris and Easton Railroad (*P. L. 1837 p. 426*); Somerville and Easton Railroad (*P. L. 1847 p. 133*).

The omission of the usual provision as to wagon ways in the charter of the Montclair Railway Company indicates that the legislature did not intend to impose that burden on the company.

The crossing involved in this case was a mere wagon way connecting portions of the complainant's lands, which had been severed by the construction of the railroad, and was protected

by bars and a fence, which the deed compelled the railroad company to make and maintain.

Even if the charter provisions had been in the form usual at that date in railroad charters, it would have been competent for the owner of the land to agree with the railroad company as to the method of crossing, and where a deed for the land is made embodying such an agreement it is to that deed we must look for the obligations of the parties. *Brearley* v. *Delaware and Raritan Canal Co., 20 N. J. Law (Spenc.) 236; Perry* v. *Pennsylvania Railroad Co., 55 N. J. Law (26 Vr.) 178, 184; Pipe Line Co.* v. *Delaware, Lackawanna and Western Railroad Co., 62 N. J. Law (33 Vr.) 254, 272.*

In construing the deed, we are helped by an examination of the language at that time common in railroad charters, and afterwards used in the General Railroad law. In all except the earliest—that of the Camden and Amboy—the railroad company is required to construct passages "over or under" the railroad. The general law adds the word "across." These citations from the statute suffice to show that from the beginning of railroads in this state a difference was recognized between a crossing over and a crossing under the railroad. The natural meaning of the expression used in the deed—"a suitable and convenient road crossing *across the track* of said railway"—is a grade crossing. And so the parties to the deed themselves construed it at the time.

The decree of the court of chancery gives the owner of the land a tunnel under the railroad instead of the grade crossing provided for by the deed, at a cost of over $5,000 to the railroad company, for the sole benefit of land of the complainant worth about one-third that amount. Such a result could certainly not be deemed equitable unless the crossing provided for by the deed had become impracticable through the fault of the defendant. In this case the impracticability of maintaining the crossing in its former state is due to the enforced change of grade made by the railroad company in obedience to a decree of the court of chancery, pursuant to the statute (*P. L. 1895 p. 462; 2 Gen. Stat. p. 2717 pl. 343*), in order to subserve the advantage and safety of the public by doing away with a crossing at grade

of the railroad and the street railway. It is inequitable to force the defendant to substitute for the crossing which its predecessor in title agreed to give, a better passage of a different kind and much more onerous to the company—more onerous not merely in the first cost but in the future maintenance of the tunnel and the railroad structure above. The incapacity of the defendant to carry the contract into execution affords a ground of defence in a suit for specific performance (*Fry Spec. Perf.* § 658; *Danforth* v. *Philadelphia and Cape May Short Line Co., 30 N. J. Eq. (3 Stew.) 12, 16*), and even where it is possible to perform the contract specific performance is refused if the burden upon the defendant greatly outweighs the advantage to the complainant; in such case the party is left to his action at law for damages.

Instances where specific performance of contracts similar to the present has been denied by the courts are *Murdfeldt* v. *New York, West Shore and Buffalo Railway Co., 102 N. Y. 703; 7 N. E. Rep. 404; Conger* v. *New York, West Shore and Buffalo Railway Co., 120 N. Y. 29; 23 N. E. Rep. 983; Goding* v. *Bangor and Aroostook Railroad Co., 94 Me. 542; 48 Atl. Rep. 114.* An early case is *Clarke* v. *Rochester, &c., Railroad Co., 18 Barb. 350.* In that case the court refused specific performance because "a crossing would be of small value to the owner and would entail much expense on the company." Judge Strong, in delivering the opinion of the court, said: "The court will never compel a performance specifically, when, looking at all the circumstances on both sides, it is apparent that injustice would thereby be done."

Most of the cases cited from the New York reports by the respondent involved the performance by the railroad company of a statutory duty, and the courts held that it was no defence that the performance of that duty might be very onerous. The specific performance of a contract, of which exact performance is impossible, stands upon a different footing.

The case of *Post* v. *West Shore Railroad Co., 123 N. Y. 580; 26 N. E. Rep. 7*, is more like the present case, but there is this important difference: the change of the highway in that case was the voluntary act of the railway company,

although made to meet the objection of the highway commissioner to the road as at first proposed. Judge Andrews was careful to say: "But the covenant with the plaintiff was not discharged by the objection of the commissioner, *for the company was under no legal compulsion to follow his direction in the matter.*" In the present case the company was under the compulsion of a decree of the very court which makes the present decree.

It is not physically impossible for the railroad to construct a grade crossing as the deed requires. It cannot, indeed, construct a grade crossing at exactly the same point of space; the change of grade makes that impossible. It has offered to construct a grade crossing ·at the same point in its line, but at the new grade. To make such a crossing it will be necessary either to construct approaches on the company's land parallel to and on both sides of its track, making a considerably greater distance for the complainant to travel, or to construct approaches at right angles to the track, for which purpose complainant's land must be used. It has been held, in a similar case in Massachusetts, that the expense of preparing the approaches on his own land must be borne by the landowner (*Williams* v. *Clark, Receiver, 140 Mass. 238; 5 N. E. Rep. 802, 804*), but that case turned on the language of the deed, which required the railroad company to make a crossing entirely within the limits of the land conveyed, from which the court inferred that what was necessarily done outside of those limits must be done by the landowner, for the railroad company could not enter upon his lands without committing a trespass.

In *Storer* v. *Great Western Railway Co., 2 Younge & C: 48,* the vice-chancellor decreed that the railroad company should perform its agreement and that the plaintiff must afford them all reasonable assistance in his power. The opinion states that the plaintiff undertook to put the railroad company in possession of the land necessary for the approaches.

In the present case the complainant is unwilling to accept a grade crossing with approaches constructed on the railroad company's land, or to allow approaches to be constructed on his own land. He insists upon a tunnel.

Where specific performance of a contract in exact accordance with its terms has become impossible, the courts have, in some instances, required the defendant to perform as nearly as possible. *Pom. Spec. Perf.* §§ *296, 297.* If that rule is applicable to a case like the present, we think the methods of crossing proposed by the defendant both approximate more closely to the original crossing than the tunnel. The complainant cannot, by rejecting those plans, equitably compel the defendant to give him such an entirely different passage at an expense nearly ten times as great.

Although we think the complainant is not entitled to a decree for specific performance, we think he is entitled to compensation for the destruction of his crossing. It is true, as counsel for the defendant argued, that he was bound to anticipate a possible change of grade in the railroad as public necessity might require. *Central Railroad Co.* ads. *State, 32 N. J. Law (3 Vr.) 220,* decided in 1867, three years before the date of the deed now in question. He was not bound to anticipate that his crossing would thereby be destroyed. The right of the railroad to change the grade as the need arose was subject to an obligation to preserve fairly the private use. Nor can he be deprived of his crossing without compensation because the change of grade was made under compulsion of the court of chancery. The change of grade did not make it necessary for the railroad company to destroy the crossing; they might, if they had chosen, have built the tunnel which the complainant demands; and although we think it inequitable to give the complainant more than the deed entitles him to, we think he is entitled to be made whole for what he has lost. He was not bound to accept the new methods of crossing suggested by the defendant, since they differed materially from the crossing as it had existed. The only way in which the complainant can be made whole is by the payment to him of the value of what he has lost.

The jurisdiction of the court of chancery to award damages where both parties submit themselves to the jurisdiction of the court is established. The cases are collected in Vice-Chancellor Pitney's opinion, in *Sparks Manufacturing Co.* v. *Town of Newton, 57 N. J. Eq. (12 Dick.) 367* (at *pp. 392, 393*), and the

opinion in this respect met with the approval of this court. *Ingersoll* v. *Newton, 60 N. J. Eq.* (*15 Dick.*) *399.*

The complainant has not submitted the question of damages to the court, and may not wish to do so. If he elects so to do the bill may be retained in order that the damages which the complainant has sustained by the destruction of the crossing may be ascertained by the court of chancery. If he does not so elect, the bill must be dismissed.

*For affirmance*—PITNEY, BOGERT, VOORHEES, GREEN, GRAY —5.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, GARRETSON, SWAYZE, VREDENBURGH, VROOM—7.