JOSEPH MICHALEK, Appellee, v. CEDAR RAPIDS & IOWA CITY RAILWAY & LIGHT COMPANY, Appellant.

MANDAMUS: When Writ Lies—Railroad Crossing—Refusal to Construct—Concurrent Jurisdiction of Railway Commission. The jurisdiction of the court to entertain mandamus to compel a railway company to construct underground or grade crossings, as provided by Chap. 163, Acts 35th G. A. (Sec. 2022, Sup. Code, 1913), is neither more nor less than it was under Sec. 2022, Sup. Code, 1907, said Chap. 163 being simply a repeal of said Sec. 2022 and its literal re-enactment, *with additions* which neither qualify nor diminish the older statute. The permissive right, granted in said Chap. 163, to resort to the Railway Commission for the

enforcement of the rights therein granted, is not inconsistent with the continued right of the court to enforce such rights.

**RAILROADS:**    **Private Crossings—Undercrossing—Excessive Cost.**
2   The fact that the cost of an *underground* crossing will exceed the value of the naked tract of land from which access is desired, will not, of itself, defeat the landowner's right to such a crossing when a *grade* crossing is impracticable.   Evidence reviewed, and *held;* an undercrossing was properly ordered.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

FRIDAY, DECEMBER 17, 1915.

MANDAMUS proceeding whereby the plaintiff seeks to compel the defendant railway company to provide him with an adequate private crossing. There was a decree for the plaintiff, and the defendant appeals.—*Affirmed.*

*John A. Reed* and *Barnes & Chamberlain,* for appellant.

*C. E. Wheeler* and *E. C. Preston,* for appellee.

EVANS, J.—The plaintiff is the owner of land on both sides of the defendant's railway. His farm consists of 167 acres. The railway of the defendant company traverses the same so as to leave on one side a triangular tract comprising about 8 acres, and on the other side, the remainder of the farm. The defendant's railway is an electric interurban road. The plaintiff demands an *underground* crossing at a designated point. He made his request of the defendant while the railway was in course of construction. The following diagram will be an aid to an understanding of the discussion:

The diagram here shown comprises the 8-acre tract already referred to. The base of this triangle is about 1,800 feet, the perpendicular about 560 feet, and the hypotenuse about 1,900 feet. The base is a part of the south line of plaintiff's farm and abuts upon an east and west highway. (This highway, however, runs in a slightly diagonal direction, of which we need take no account for the purpose of this discussion.) The hypotenuse is the line of defendant's railway. It cuts off the triangle from the southwest part of plaintiff's farm. The main buildings upon plaintiff's farm, at the time of the appropriation of the right of way, were those located near the southeast corner thereof, and some distance east of the intersection of railway and highway, shown in the above diagram. At such time, however, plaintiff was contemplating the erection of another set of buildings upon that part of his farm included within the triangular tract. The reason for this was that he had entered into an arrangement with his son for the operation of his farm, whereby the son was to occupy the original buildings and whereby he himself was to build a new set of buildings for his own occupation. In pursuance of such plan, the plaintiff erected a house, and, at the time of the trial below, was making preparations to erect a barn upon such tract. The plan between the father and son also contemplated, after 1914, a division of the farm into approximately equal parts and the use of the eastern part by the son, and of the western part by the father. The location of the house and the proposed location of the barn are shown upon the above diagram. The place of the requested crossing is also shown therein. Prior to plaintiff's demand, the defendant company had already improvised a crossing, which did not, however, comply with the requirements of the statute.

The real controversy between the parties is whether the plaintiff is entitled to an order in this action for an *underground* crossing. The defendant is willing to furnish to him

either one or two grade crossings, at any point where it

**1. MANDAMUS: when writ lies: railroad crossing: refusal to construct: concurrent jurisdiction of railway commission.**

is practicable to construct the same. The defendant also contends that there are points at which such construction is practicable. On the other hand, the plaintiff contends that, by reason of the high grade of the railway, an adequate grade crossing is not practicable at any point within the boundaries of the plaintiff's land, and for that reason he demands an underground crossing.

At the threshold of the controversy, we are confronted with a new statute, being Chapter 163, Acts 35th G. A. Such act repealed Section 2022, Code Sup., 1907, and in lieu thereof enacted the following:

["When any person owns land on both sides of any railway], or when the railway runs parallel with the public highway, thereby severing the farm from the public highway, [the corporation owning the same shall, when requested to do so, make and keep in good repair a sufficient causeway or other adequate means of crossing the same and one cattle guard on each side thereof connected by cross fences to the right of way fence on each side of the right of way at such reasonable place as may be designated by the owner.] If such person desires more than one crossing or desires an overhead or underground crossing over or under said railway, he shall serve or cause to be served a notice in writing upon such railway company setting forth his demand, with a plat of the land showing the place and manner of the desired crossing or crossings. If such railway company, within thirty days after having been served with such notice, has failed and refused to construct such crossing or crossings, such person may apply to the board of railroad commissioners of this state which shall have full authority to determine all questions growing out of such demand, and upon hearing, after due notice, make such order as it may deem just and equitable."

It is the contention of the defendant that the effect of this enactment is to confer upon the railroad commissioners

exclusive jurisdiction over the question of underground cross-
ings, and that the court, therefore, has no jurisdiction to
decree an underground crossing. It will be noted that the first
part of the enactment above quoted, which, for convenience,
we have indicated in brackets, is an exact reproduction of
Code Section 2022 as amended by the 32d G. A. and as it
appeared in the Code Supplement of 1907. Under such Sec-
tion 2022, we have previously held that its provisions were
enforceable by a mandamus proceeding in court, notwith-
standing that, subsequently to its enactment, a concurrent jur-
isdiction had been conferred by statute upon the railroad com-
missioners. *Swinney v. Chicago, R. I. & P. R. Co.,* 123 Iowa
219; *State v. Mason City & Ft. D. R. Co.,* 85 Iowa 516; *Herr-
strom v. Newton & N. W. R. Co.,* 129 Iowa 507; *Mattice v.
Chicago, G. W. R. Co.,* 130 Iowa 749.

The point now made by the defendant is that, inasmuch
as the previous statute was repealed and the statutory right
to a crossing is enacted in a new form and such new enact-
ment provides its own remedy, such remedy is necessarily
exclusive.

It is doubtless true, as a general proposition, that, where
a new right is created by statute and a remedy is provided
by the same statute for its enforcement, such remedy will
ordinarily be deemed exclusive. This rule, however, does not
support the argument for defendant. The new enactment
does not purport to abridge any right of the plaintiff which he
had under the previous statute. As already indicated, the
previous statute is literally re-enacted. The re-enacting pro-
vision is in no manner qualified or diminished by what fol-
lows. Under the previous statute as re-enacted, a plaintiff
in such case has an absolute statutory right to one adequate
crossing. In our construction of the statute heretofore, we
have held that such adequate crossing ordinarily means a
grade crossing. We have held also that, where an adequate
grade crossing was practicable, the plaintiff was not entitled
to an underground crossing, although an underground cross-

ing might be, as it usually is, of much greater convenience and
advantage to the plaintiff.

The additional provisions of the new enactment purport
to go no further than to confer upon the railroad commis-
sioners a certain power of discretion to make orders for more
than one grade crossing or for an overhead or an underground
crossing if they shall find the demands therefor to be ''just
and reasonable''. For the purpose of the argument only, it
may be conceded that such discretion is not conferred upon
the court. It does not follow that the powers heretofore exer-
cised by the court in the enforcement of the provisions of Code
Section 2022 have been in any manner curtailed.

We hold, therefore, that the power of the court to enforce
the provisions of Section 2022, as re-enacted by the 35th G. A.,
is neither more nor less than it was prior to such re-enact-
ment. The question, then, is resolved to this:
2. RAILROADS: pri-  Is an adequate grade crossing practicable
vate crossings:
under crossing:
excessive cost.  within the boundaries of plaintiff's farm? If
yea, then plaintiff is not entitled to an underground crossing.
If nay, then he is entitled to such underground crossing of
necessity and not of discretion. Such was our holding in the
*Swinney* case, *supra*.

Turning to the facts, the topography of the triangular
tract is level and somewhat low. Its highest elevation is at
its eastern point. From such point, the land becomes lower
toward the west and continues to lose elevation up to a short
distance east of the west end, where a slight rise occurs. The
plaintiff's house is located a little more than 600 feet from
the eastern point. Fronting the road, it extends to the rear to
within 25 or 30 feet of the right of way. Two hundred and
twenty-five feet farther west is the proposed location of the
barn. The point selected by the plaintiff for a crossing is
opposite this location. At this point, the railway is con-
structed upon a grade which is 9 feet *plus* on one side and 12
feet *plus* on the other side, above the natural surface of the
ground. This grade extends at a varying elevation from the

surface of the ground for the full length of the railway through plaintiff's land, except that it comes to the natural surface at the eastern point of the triangle, and except that the height of the grade is considerably reduced at plaintiff's west line. The place at which the defendant had begun the construction of a crossing is at this eastern point. The opening into such crossing is from the highway. A crossing at this place gives to the plaintiff practically no additional convenience over and above what the public highway crossing would give him. It is contended by defendant that a practicable grade crossing could be constructed 225 feet west of such point, and that another could be constructed within 100 feet of the west line of plaintiff. Manifestly, such locations are very inconvenient to the plaintiff, as compared with a location near his house or barn. The trial court evidently found that a grade crossing was not practicable at either place. After a careful consideration of the evidence in the record, we are disposed to the same conclusion. The defendant does not claim that it would be practicable to build a grade crossing over the higher parts of the embankment. The really meritorious defensive claim of the defendant is the excessive cost of building the underground crossing. Its cost to the railroad company will be greater than the value of the 8-acre tract without improvements. It must be borne in mind, however, that the value of the 80 acres on the other side of the right of way must be also considered in this connection. The cost of construction of such underground crossing will now be several hundred dollars greater than it would have been if it had been constructed while the railway was in the process of being constructed and graded. But the plaintiff was prompt in making his demands in time for that consideration. The defendant wholly ignored it. It is not entitled to consideration, therefore, so far as such increase in cost is concerned. The claim of expense of such a crossing is a matter which is entitled to grave consideration. Of itself, however, it is not sufficient to justify a refusal to the plaintiff, if a

grade crossing be found to be impracticable. On the other hand, the mere fact that an underground crossing is more advantageous to the plaintiff than a grade crossing is not sufficient to sustain the plaintiff's request in that regard.

Upon the whole record, we think that the trial court was justified in its conclusions, and that the underground crossing was properly awarded of necessity, because it was impracticable to present an adequate grade crossing at any point within the limits of plaintiff's land. The order is, therefore,—
*Affirmed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.