J. C. O'Malley, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

**RAILROADS: "Grade" Crossings Not Universal Rule.** *"Grade"* 1 crossings over railway right of ways which divide the land of landowners are distinctly in favor, and are, ordinarily, all the landowner may demand; yet the company may not so con-struct its embankments as, to render a "grade" crossing im-possible of construction wholly upon its right of way, and then insist on a "grade" crossing or no crossing at all, on condition that the landowner contribute the necessary land for approaches outside the right of way.

**RAILROADS: Private Crossings—Application to Railroad Commis-** 2 **sion.** The statutory duty of a landowner to apply to the rail-road commissioners to settle disputes relative to private cross-ings applies only to those cases where the landowner already

has *one* crossing and desires an *additional* one, either under, overhead, or grade. (Sec. 2022, Code Supp., 1913.)

**RAILROADS:** Private Crossings—Mandamus. A landowner whose
3 lands are divided by a railway right of way has an absolute right, enforceable in the courts, *and without application to the Railroad Commission*, to at least *one* adequate crossing over such right of way to a grade crossing, if that be practicable, but, in any event, to an adequate crossing, even though it be an overhead or underground crossing. (Sec. 2022, Code Supp., 1913.)

*Appeal from Dallas District Court.—W. H. FAHEY, Judge.*

JANUARY 9, 1918.

REHEARING DENIED MAY 17, 1918.

ACTION in equity for a mandatory injunction requiring the defendant to give to plaintiff an adequate crossing over its tracks. The opinion states the facts. Decree for the plaintiff. Defendant appeals.—*Affirmed.*

*Hughes, Sutherland & Taylor,* for appellant.

*E. J. Kelly,* for appellee.

GAYNOR, J.—This is a suit in equity, the purpose of which is to secure a writ of mandamus compelling the defendant to construct a private crossing for the plaintiff where defendant's railway crosses plaintiff's

1. RAILROADS: "grade" crossings not universal rule.

farm. The plaintiff claims that the right of way of the defendant company cuts the plaintiff's land into two parts, one of which lies north and the other south of the right of way; that the defendant has refused to construct and maintain a private crossing over its railway track at any point where the said track divides the land, and plaintiff has no adequate means of access to his lands. Plaintiff further pleads that the railway track over its right of way has been so constructed for a period of thirty years; that, during most of this period,

defendant has maintained a farm crossing for the plaintiff, connecting the two parts of his land and providing for plaintiff a reasonable and adequate crossing over its tracks to his lands; that, within the past three years, the company has raised the grade of its track to such an extent as to render the farm crossing theretofore used by the plaintiff and maintained by the defendant useless; and that, since it raised its track, the plaintiff has no adequate means of reaching his land from one side to the other; that, for more than a year prior to the filing of this petition, the plaintiff demanded of the defendant that it construct a crossing over its railway track at the point at which the farm crossing theretofore used had stood, and that the defendant has refused to do so, and still refuses, and has refused to furnish the plaintiff any adequate means for crossing its track.

Defendant, for answer, says that the plaintiff has never requested the defendant to make a crossing over its tracks, nor has plaintiff pointed out a place where such crossing should be constructed; further, that there is no jurisdiction in the court to order defendant to make the crossing, for the reason that the jurisdiction is lodged in the Railroad Commission of the state, after notice duly given. It further says that it is willing to construct and now offers to construct a grade crossing, at, or substantially at, the point where plaintiff's former crossing was located, being the place where plaintiff has signified his desire to have the same put, and to do this within a reasonable time, provided the plaintiff signifies his willingness to permit the approaches to the same to extend on his land for a sufficient distance to permit of a safe and proper grade; but that the plaintiff has not signified his willingness to have the approaches so constructed, but objects to the same.

Upon the issues thus tendered, this case was submitted on a stipulation of facts as follows:

"It is conceded by both parties to this action that the

defendant is a corporation, engaged in the operation of a railroad through and across Dallas County, Iowa; that the plaintiff is the owner of the land described in his petition; and that the railroad of the defendant company runs through said land, and consists of a double-track system, with a right of way, at the point where the same crosses plaintiff's land, of 170 feet in width; that plaintiff's residence, barns, and other farm buildings are south of said railroad tracks; and that that portion of plaintiff's land lying north of said railway track consists of approximately 40 acres of ground, and is used by the plaintiff for the cultivation of ordinary farm crops, and for the pasturage of stock; and that the balance of plaintiff's land lies on the south side of said railway tracks; that, during the two years prior to the filing of the petition in this case, the defendant company has raised the grade of its tracks, and its roadbed where the same crosses plaintiff's land, the raise in grade at said point being proximately 13 feet; and that the average height of said track across plaintiff's land is 20 feet above the level of the land; that, for many years prior to the raising of the grade of the said track of the defendant company, the said company maintained for the plaintiff a farm crossing at grade across its said track and right of way, connecting the said two parts of plaintiff's farm over the track of the defendant company; that the right of way owned by the railway company at or near the point at which plaintiff's farm was, is not of sufficient width to permit of the building of approaches to a grade crossing at said point, and said point being conceded to be the lowest point in the grade across plaintiff's farm, and it being conceded that, in order to construct a grade crossing at said point, it will be necessary to construct the approaches thereto upon land belonging to plaintiff, unless more land is acquired by the defendant company; that the distance at which said approaches at said point project from the right of way of the defendant as now

maintained on the south side would be proximately 100 feet; and that said approaches would be, at the base thereof, proximately 70 feet in width. It is further conceded that, should a grade crossing be constructed at any other point in plaintiff's land over said railroad tracks, that the approaches thereto would extend outside of the railway company's present right of way proximately the same as has heretofore been stated."

This stipulation was supplemented by the following testimony given by the plaintiff:

"I know the location of the crossing that the railway company maintained over their tracks and right of way prior to the time this grade was raised, and that it is about the most suitable location for a grade crossing anywhere in my field. The old crossing is shut up. It is fenced in, and they have never put in the new crossing. The raising of the grade destroyed the old crossing, and the right of way is fenced across the road. I have no crossing there at the present time. The railway company has done nothing toward providing me with a crossing since the other crossing was closed up. I have demanded the company to construct a crossing, but they have not done so yet."

With this evidence supporting the issues tendered, the court entered a decree for the plaintiff, ordering "that a writ of mandamus issue, compelling the railway company to construct and make ready for plaintiff's use an adequate means of crossing their right of way, at or substantially at the point upon plaintiff's land where plaintiff's former crossing was located, and that defendant is hereby ordered to construct said crossing as aforesaid," the work to commence within sixty days from the date of the decree, and the crossing to be completed as rapidly as is reasonable, in view of weather conditions. From this decree defendant appeals, and urges for our consideration the following propositions:

(1) The court erred in refusing and failing to hold that

the plaintiff was required to provide the land upon which the approaches to the crossing should be built, before he could request the construction of the same, or before the court could order it constructed.

(2) The court erred in decreeing that the defendant should construct a crossing at or substantially at the place where plaintiff's former crossing was located, without first requiring the plaintiff to provide ground for the approaches thereof; since the decree, in effect, required the construction of an under crossing, which can only be ordered by the board of railroad commissioners, in the manner provided in Section 2022 of the Supplement to the Code, 1913.

(3) The court erred in ordering the issuance of the writ of mandamus compelling the construction of an under crossing, until the plaintiff had furnished the necessary ground upon which to construct the approaches thereto.

The theory of the appellant, defendant, seems to be that the only crossing that the court had power to require defendant to construct was the grade crossing; that the defendant is not bound in law to construct any other crossing, unless ordered to do so by the board of railroad commissioners; that, inasmuch as the court was limited in its power in a mandamus proceeding to requiring the defendant to construct a grade crossing, it had no power to mandamus the defendant to construct any other crossing than a grade crossing; that the record discloses that a grade crossing cannot be put in at the place designated by the plaintiff, except by extending the approaches onto plaintiff's land; that the court should have required the construction of a grade crossing, but should have imposed upon the plaintiff the duty of furnishing approaches to the grade crossing upon his own land; that the defendant is not bound to construct a grade crossing for the plaintiff except upon its own right of way; that, if an adequate grade crossing cannot be furnished in that way, and it becomes necessary, in order to

make it effectual as an adequate crossing, that the approaches extend onto the plaintiff's land, the plaintiff should be required to contribute so much land as is necessary for the construction of the approaches.

It is well to have the statute before us, in disposing of this question. Section 2022, Code Supplement, 1913, being Chapter 163 of the Acts of the Thirty-fifth General Assembly, provides:

"When any person owns land on both sides of any railway, or when the railway runs parallel with the public highway, thereby severing the farm from the public highway, the corporation owning the same shall, when requested to do so, make and keep in good repair a sufficient causeway or other adequate means of crossing the same and one cattle guard on each side thereof connected by cross fences to the right of way fence on each side of the right of way at such reasonable place as may be designated by the owner. If such person desires more than one crossing or desires an overhead or underground crossing over or under said railway, he shall serve or cause to be served a notice in writing upon such railway company setting forth his demand, with a plat of the land showing the place and manner of the desired crossing or crossings. If such railway company, within thirty days after having been served with such notice, has failed and refused to construct such crossing or crossings, such person may apply to the board of railroad commissioners of this state which shall have full authority to determine all questions growing out of such demand, and upon hearing, after due notice, make such order as it may deem just and equitable."

The provision of the statute above set out has been the law of this state for many years, except that portion which gives to the railroad commissioners the power, under certain circumstances, to determine the character of the crossing, commencing with the words: "If such person desires

more than one crossing or desires an overhead or under-
ground crossing." As said in *State v. Chicago, M. & St. P.
R. Co.*, 86 Iowa 304, "Grade crossings are the rule in this
state." As said in *State v. Burlington, C. R. & N. R. Co.*, 99
Iowa 565:

"Owing to the topography of the state and the usual
size of farms, grade crossings are usually adequate, and
hence 'are the rule in this state.' "

We may start with the proposition that grade crossings
are usually adequate; that they are the rule in this state;
that ordinarily a grade crossing can be furnished by the
company over its right of way; and that a
grade crossing furnishes an adequate means
of crossing the same, and usually one grade
crossing is sufficient. We think it was with
this thought in mind that the Thirty-Fifth General Assembly
saw fit to add to the statute, and to say that, if the landown-
er desires more than one crossing, or desires an overhead or
underground crossing, he must apply to the railroad commis-
sioners to determine his right to such crossing or crossings.
It could not have been the intention of the legislature to
say that the absolute right to *a crossing*, provided for in the
first part of the statute, is limited to grade crossings; that,
in the event the railroad company made it impossible, by the
manner of constructing its roadbed, to make a grade cross-
ing, the right to a crossing as an absolute right did not
thereafter exist, but the right must be presented to and de-
termined by the railroad commissioners before it could be
insisted upon. The first part of the statute gives to the land-
owner the right to a crossing over the railroad tracks to his
lands on either side, and imposes upon the railroad company
the duty to furnish him an adequate means of crossing the
same, and it must furnish this to him upon request,—make
it and keep it in repair. The right to cross from one piece
of land to the other, divided by the railroad track, is an ab-

2. RAILROADS:
private
crossings:
application to
railroad com-
mission.

solute right given the landowner, and the duty is imposed upon the company to furnish him an adequate means for so doing. The theory being that a grade crossing is usually adequate, the company is not required, ordinarily, to furnish any other; and, where a grade crossing can be furnished and is adequate, the company discharges its duty by furnishing such a crossing. If, however, the landowner desires more than one grade crossing, or desires an underground or overhead crossing, notwithstanding the fact a grade crossing may be or is furnished, he may apply to the railroad commissioners to have determined his right to such other crossing or crossings.

The plaintiff in this case has never demanded or expressed any desire for more than one crossing, or for an overhead or underground crossing. He demands of the defendant a primary right given by the state to cross over these tracks to his lands. The defendant answered:

3. RAILROADS: private crossings: mandamus

"We have so constructed the embankments upon our right of way and our roadbed that we are not able to furnish you an adequate grade crossing. We therefore cannot and will not give you any crossing, because we cannot give you a grade crossing that is adequate without trespassing on your land. This we have no right to do. We will not give you an underground crossing or an overhead crossing because you have not invoked the right tribunal to compel us to do that. Therefore, you must go without any crossing, or you must join with us in making a grade crossing by furnishing sufficient of your own land to make the approaches. Or, in other words, we cannot make a grade crossing unless you contribute to the expense of making it. Unless you will contribute to the expense of making it, we will not make it."

The court says:

"Your duty is to give him a crossing over your right of

way. The law does not designate what kind of crossing you shall give him. The duty rests on you. If you cannot give him a grade crossing, give him such other crossing as is adequate. You have then discharged your duty under the statute. You need no order from the railroad commissioners to authorize you to do this. You must make a grade crossing or an underground crossing, but it must be adequate. This is all the plaintiff asks. This is all the decree requires of you."

As has been held by this court, the right to resort to the railroad commissioners, under this statute as amended, is merely permissive, and is not inconsistent with the continued right of the court to enforce such rights. See *Michalek v. Cedar Rapids & I. C. R. & L. Co.*, 173 Iowa 231.

When the defendant company, through the power of eminent domain, entered upon the plaintiff's land, and condemned it to the uses of the company, the law said to the railroad company, "You must make compensation." When the right of way divides the lands of the plaintiff into two or more parts, and roadbeds and embankments are constructed for the laying of tracks, the owner necessarily is embarrassed in the use of his lands so divided, and, if they were permanently divided, that fact would be considered in determining the amount the company is required to pay him. He is met, however, with the proposition that the lands are not permanently divided; that, under the law, "it is the duty of the railroad company to give him adequate means of crossing these tracks at such reasonable place as he may designate." His damages are, therefore, lessened because of the fact that this duty is imposed upon the company, and his damages are, therefore, assessed in the light of this fact. Now the company pays the damages, takes possession of the land, constructs its roadbed, raising the grade 20 feet above the surface, and says to the landowner:

"We cannot give you a grade crossing unless you con-

tribute to the expense. The damages which you recover from us were estimated on the theory that we would give you this grade crossing,—that we would furnish it, make it adequate and keep it in repair; but we find we have so constructed our track that we cannot give you this crossing unless you contribute to the expense of erecting it by furnishing to us more land, sufficient to enable us to build approaches to the crossing. We consider an underground crossing too expensive."

This answer would hardly meet the situation. An apology for not discharging a duty is no good reason for not requiring the duty to be discharged. The plaintiff is entitled to a crossing. If the defendant finds itself in such a situation that it cannot give him the usual and ordinary crossing, to wit, a grade crossing, then it must furnish him some other adequate crossing within the power of the company to furnish. Can it be the law that the plaintiff, under the situation, is required to contribute to the building of that which, the law says to the defendant, "you shall give him in part consideration for the taking of his land?" It is a part consideration because it is an element to be considered in estimating the amount of damage which the plaintiff may recover. We see no escape from the conclusion that the plaintiff is not bound to furnish land for the approaches; that the defendant is bound to furnish the plaintiff an adequate means of crossing from one side of the track to the other; and that, if it cannot make a grade crossing, it must give to the defendant some other adequate means of crossing this track. We have read *Speer v. Erie R. Co.*, 68 N. J. Eq. 615 (60 Atl. 197), and *Williams v. Clark*, 140 Mass. 238 (5 N. E. 802), and are not by these cases persuaded to a different holding than is here indicated.

Upon the whole record, we see no ground for interfering with the judgment of the district court, and its decree is affirmed. The time within which to perform the mandate

of the court, however, is extended to May 1, 1918.—*Affirmed.*

PRESTON, C. J., LADD, EVANS, and SALINGER, JJ., concur.